26715. NORRIS *et al. v.* MACON TERMINAL COMPANY *et al.*

DECIDED JULY 9, 1938.   REHEARING DENIED JULY 22, 1938.

*E. W. Maynard, Thomas A. Jacobs Jr.,* for plaintiffs.

*Jones, Russell & Sparks, Harris, Harris, Russell & Weaver,* for defendants.

MACINTYRE, J.   Mrs. T. W. Norris died from injuries received while on the property of the Macon Terminal Company. Her husband and son joined in bringing the present action for her death. The verdict was for the defendants, and the plaintiffs excepted to the overruling of their motion for new trial. The petition alleged that the deceased, while standing on the sidewalk which is on the private property of the terminal company, was killed by reason of an automobile driven by one Marks falling over an embankment at the end of a private driveway leading from Poplar Street to the south end of the terminal station, this driveway leading to that part of the depot used by the Railway Express Agency Inc.; that said driveway was maintained by both defendants for their mutual benefit; that said driveway had the appearance of a through street, and no one unfamiliar therewith would know it came to an abrupt end; that there were steps which led from the sidewalk to the level of the driveway, and Mrs. Norris was standing at the foot of these steps, waiting for her husband, and was in the exercise of ordinary care for her own safety; that suddenly the car driven by Marks, who was unfamiliar with the driveway, drove up the driveway and he, not knowing of the abrupt end thereof, drove over the embankment, fell, and killed Mrs. Norris; that there was no railing, guard, or other device to warn strangers of the sudden ending of the driveway or to prevent them

from going over the embankment, and Marks thought this driveway was a public street connecting Poplar Street with streets north of the depot; that there was formerly a railing and a guard at the end of the driveway, but it had rusted and the defendant had removed it and had never replaced it; that leaving Poplar Street the driveway is inclined, and a person entering same can not see or know of its termination until reaching the crest of the incline, and a person not familiar with the premises would go over the end thereof without knowing of its end, unless he maintained a very close and strict lookout ahead; that the defendants were charged "with notice that persons driving up the driveway might not at all times be closely attentive as the sound of trains and bells, and watching persons about the depot might attract attention, and defendants were charged with notice that persons unfamiliar with the premises would use the same, and ordinary care and diligence demanded that defendants take proper measures and steps to give ample and sufficient warning to persons unfamiliar with the premises and guard against persons who might be attracted by the trains and noise and excitement usually prevailing about depots and railway stations." The statement of negligence contained in the petition was substantially as follows: The defendants were negligent in not exercising ordinary care toward deceased to make the premises and approaches thereto safe; in maintaining a driveway coming to an abrupt end, without placing suitable barriers, guards, or warnings of such condition; in failing to have a signal or a watchman to warn of the abrupt end; knowing that strangers would use the driveway whose attention would be engrossed about other matters; and in failing to erect barriers to prevent them from going over the embankment and injuring persons using the station and depot; in laying out and constructing the driveway coming to an abrupt end; in negligently inviting Mrs. Norris to use the station, knowing of the danger of cars going over the embankment, and in not warning her of the danger.

It appears from the evidence that on the day in question Mr. and Mrs. T. W. Norris went to the Macon terminal station to meet a friend. The premises of the Macon terminal station occupy the two city blocks between Mulberry Street on the northeast and Poplar Street on the southwest, in Macon. Fifth Street runs northeast and southwest in front of the station premises, and is

perpendicular to Mulberry and Poplar Streets. Cherry Street is parallel to and half way between Mulberry and Poplar Streets, and ends at Fifth Street. The intersection of Cherry and Fifth Streets is immediately in front of the station proper. Beginning several yards northeast of the Fifth Street and Poplar Street intersection, the defendant's driveway crosses the sidewalk on the southeast side of Fifth Street, cuts sharply to the left inside of an iron fence that separates the driveway from the sidewalk, extends up a gradual incline about 300 feet, then levels off and widens in front of the loading platform used by the Railway Express Agency which rents from the terminal company. This iron fence extends along the left side of the driveway approximately 300 feet. This wide portion of the driveway extends approximately 200 feet further, and is about eight feet above the level of Fifth Street. A concrete coping about six inches high extends around the edge of the driveway and at the end thereof. The width of the driveway from this coping on the northwest side to the express and baggage office wall is about forty-one feet. Taking out the projection of the building and steps leading from the driveway to the sidewalk immediately below it and in front of the station proper, there are approximately sixteen feet on the left side (facing northeast) at the end of the driveway, which has no obstruction save the six-inch coping. Formerly the iron fence aforementioned extended around the end of the driveway, but it had become rusty, and was removed and was never replaced. It was over this coping and through this space that Marks drove his car to strike Mrs. Norris. Immediately before the accident Mr. Norris had gone up the above-mentioned steps to the express agency's platform to get the friend's baggage, and Mrs. Norris was waiting for him at the foot of these steps. Mr. Marks, a resident of Eastman, Georgia, had brought his family to Macon for a singing convention. He was a stranger in Macon, and knew nothing of the condition of the terminal property before this accident, and at the direction of another person was seeking to find his way back to the auditorium. The accident happened somewhere between four and six o'clock. The sun was shining, and visibility was clear. Marks, as we understand his testimony, was proceeding southeast on Poplar Street. At the intersection of Poplar and Fifth Streets he turned to the left on Fifth, and then into the

driveway in question. As to why he took this driveway he testified, in part, as follows: "I just came right down Poplar and turned, and when I went to turn there was a car come dashing by, and I pulled too far over and went up that driveway. I do not know who was driving the car that interfered with my progress so that I could not make my turn. . . When I turned up that street, I suppose I was on some incline. I thought it was the main street and I could drive on up to the terminal and turn to the left and make it back to the auditorium that way. . . The fact that it was up grade did not especially interfere with seeing the end of it, if I had been looking right down, but I was looking to see where to turn at to hit that main street to go to the auditorium. I was watching traffic coming down in front of the terminal station where I intended turning to my left, coming back through to the auditorium. I was looking for another turn in the street. . . I did not know there was any jump-off there. I just thought I would go up to the terminal station and turn to the left. . . I do not remember seeing this fence there as I was driving; don't remember whether I paid any attention to the fence or not."

The motion for new trial contains, beside the general grounds, sixty-three special grounds. These, special grounds except three which assign error on the introduction of certain evidence, constitute either exceptions to the charge by the judge to the jury, or the refusal of requests to charge. Since this court is of the opinion that the verdict in favor of the defendants is the only legal verdict that could have been rendered under the facts of the case, it becomes unnecessary that we deal with these assignments. The allegations of the petition, as borne out by the evidence, show that the deceased was an invitee upon the premises. See *Atlantic & Birmingham Ry. Co.* v. *Owens,* 123 *Ga.* 393 (51 S. E. 404). The defendants, in joint control of the premises, were under the duty of exercising ordinary care for her safety. Code, § 105-401. Did the duty to exercise ordinary care for the safety of the deceased include the duty to erect signs and barriers on the driveway so that strangers would not mistake the same for a through public street? A mere omission to act, where there is a duty to act, will amount to actionable negligence as to one to whom the duty is due. However, no duty to act arises until one has notice,

actual or constructive, that failure to so act will probably result in injury to another. "As negligence necessarily involves a violation or disregard of some duty which is known to the person charged therewith, it follows that knowledge of the facts out of which the duty arises is an essential element for consideration in determining whether one has exercised reasonable care or. has been guilty of negligence." 45 C. J. 651; *Miller* v. *Southern Ry. Co.*, 21 *Ga. App.* 367 (4b) (94 S. E. 619); *Southern Cotton-Oil Co.* v. *Shields*, 23 *Ga. App.* 476 (98 S. E. 408); *Southern Transportation Co.* v. *Harper*, 118 *Ga.* 672 (2) (45 S. E. 458); *Atlanta Baseball Co.* v. *Lawrence*, 38 *Ga. App.* 497 (144 S. E. 351). In this connection, the governing consideration is what the person sought to be charged should reasonably have foreseen, the rule being that one is bound to anticipate the reasonable and natural consequences of his own conduct. One is charged with knowledge or notice of what a reasonably prudent person would have foreseen, and is negligent if he fails to use the care necessary to avoid danger which should have been anticipated. "The standard by which to test the question of negligence vel non is undoubtedly the common experience of mankind; its existence implying the want of that care and diligence which ordinarily prudent men would use under the circumstances of the particular case." 1. Shearman & Redfield on the Law of Negligence, 16, § 9h; *Central Railroad & Banking Co.* v. *Ryles*, 84 *Ga.* 420 (11 S. E. 499); *Harden* v. *Ga. R. Co.*, 3 *Ga. App.* 344 (59 S. E. 1122); *Southern Ry. Co.* v. *Chatman*, 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675). The manner in which the defendants' maintained the private driveway could not have caused injury to any person in the deceased's position, unless a stranger were misled to believe that this private driveway was a through public street. While every person should so use his property that such use will not, in the usual and ordinary course of human activities, result in injury to others, yet, "as a general rule, one is not bound to anticipate the presence of trespassers on private property, but is, on the other hand, entitled to assume that other persons will obey the law, and not trespass." 45 C. J. 748; *Southern Ry. Co.* v. *Chatman*, supra; Ellis *v.* Ashton & St. Anthony Power Co., 41 Idaho, 106 (238 Pac. 517); Romana *v.* Boston Elevated Ry. Co., 226 Mass. 532 (116 N. E. 218). One "must exercise ordinary

care with reference to the condition contemplated by law, a condition which consists of the performance of legal duties, and the observance of legal rights, by all persons." *Southern Ry. Co.* v. *Chatman,* supra. As a general rule every person may presume, and act on the presumption, that another person will not become an active wrong-doer. *West* v. *Inman,* 137 *Ga.* 822 (74 S. E. 527, 39 L. R. A. (N. S.) 744, Ann. Cas. 1913B, 276. This is fundamentally sound, as applied to the present case.

The law makes no unreasonable demands. In rare instances does it require a defendant to foresee and guard against the act of another, which act is in violation of the rights of the defendant; and in those cases where a landowner has been held responsible to another person for the condition of a private way, it will be found that the defendant by his conduct impliedly invited and consented to such person's presence thereon. Marks was a trespasser. "The rule that there is no duty towards trespassers to keep private property in a safe condition applies to private ways even though such ways open out onto public highways; and the owner or person in charge is entitled to the benefit of the rule, although he has not put up any sign or notice that the way is not public." 45 C. J. 747. As a general rule, where a property owner constructs and maintains a private road on his premises leading from a public road, it is not incumbent upon him to place signs to warn the general public that the way is private, and one who goes thereon by mistake, thinking it to be a public road, is nevertheless a trespasser. *Harris* v. *McClintack,* 164 Ark. 145 (261 S. W. 29); *Reese* v. *Kenyon Co.,* 198 Iowa, 1015 (200 N. W. 600); *Blatt* v. *McBarron,* 161 Mass. 21 (36 N. E. 468, 42 Am. St. R. 385); *Beck* v. *Carter,* 68 N. Y. 283 (23 Am. R. 175); *Hardcastle* v. *South Yorkshire R. Co.,* 157 Eng. Reprint, 761; *Binks* v. *South Yorkshire Ry. Co.,* 122 Eng. Reprint, 92; *Printy* v. *Reimbold,* 200 Iowa, 541 (202 N. W., 122, 205 N. W. 211, 41 A. L. R. 1423); *Stevens* v. *Nichols,* 155 Mass. 472 (29 N. E. 1150, 15 L. R. A. 459). The facts of the present case fall within the above general rule. If a landowner constructs a private way over his property and for a long period of time acquiesces in its use by members of the general public, or so constructs the private way in connection with a public road as to make it impossible, under all conditions, to distinguish between them, this would amount to an implied in-

vitation, at least to the extent that he should anticipate the presence of members of the general public thereon. The present case falls in neither of the above classifications. There is no question that there had been no acquiescence upon the part of the defendants in the use of the way in question by the general public. It was not and could not be used for public purposes, for it led only to the loading platform of the express company. Nor was it so constructed, in connection with any of the surrounding public streets, as to make it impossible in broad open day to distinguish it from them, within the above rule. It was not built at the end of a public street, so as to appear under certain conditions to be a continuation thereof, as in *Williamson* v. *So. Ry. Co.*, 42 *Ga. App.* 9 (155 S. E. 113). Compare *Nashville, Chattanooga & St. Louis Ry. Co.* v. *Cook*, 177 *Ga.* 196 (170 S. E. 28). It appears to have been only the usual private way, constructed for business purposes by the owner, which connects with and leads from a public street. The way was situated just beyond the intersection of Fifth and Poplar Streets, entering Fifth at right angles, on the southeast side thereof. After crossing the sidewalk it continued on to the property for a distance about the width of the way, turned sharply to the left, and continued on an incline parallel to Fifth Street to its end. Along its left side was an iron fence which ran approximately half its length and which separated the way from Fifth Street. There was nothing about the private way which would cause any one to believe that it was a public through street, except the fact that it was paved and connected with a public street; and this was not sufficient to require the defendants to foresee its attempted use as such. In fact, taking the testimony of Marks as a whole, it does not appear that he took this private way because he was deceived into believing that it was a public thoroughfare, but he testified that he was forced into the road by the negligent operation of a car by a person unknown, as he attempted to make a left turn from Poplar into Fifth Street. In fact he was at this point lost, and knew not where he was going. The law would require no man to foresee such a state of facts. The fact that Marks was a trespasser, whose presence and use of the driveway as a thoroughfare the defendants were not required to foresee, illustrates that there was no duty to take precautionary measures to prevent injury by his acts to one rightfully upon the

premises. The evidence failed to disclose any actionable negligence on the part of the defendants. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*