28895. PIEDMONT HOSPITAL *v.* ANDERSON.

DECIDED JULY 9, 1941.  REHEARING DENIED JULY 24, 1941.

*Bryan, Middlebrooks & Carter,* for plaintiff in error.

*George & John L. Westmoreland, Joselove & Berman,* contra.

STEPHENS, P. J.  Fletcher Anderson brought suit against the Piedmont Hospital, a corporation operating a private hospital for pecuniary gain, to recover damages growing out of personal injuries which he claimed were sustained by him as a result of the alleged negligence of the defendant while the plaintiff was a patient in its hospital.  It appeared from the allegations of the petition as amended that the plaintiff's right leg was diseased; that he entered the hospital as a patient for treatment; that his physicians determined it was necessary to amputate the leg above the knee; that in order that the leg might be in good condition for the operation his physicians prescribed and instructed that an electric pad be placed thereon, above the knee joint, so as to keep warmth therein and to keep up the circulation in the leg; that a heavy narcotic or opiate for the purpose of inducing sound sleep was administered to the plaintiff, under the instructions of his physicians, so that he might be in good condition for the operation; that sometime between seven and seven-thirty o'clock in the evening of the day before the operation this pad was placed on the plaintiff's leg; that such pad was controlled by a switch which allowed it to be warm, medium warm, or hot; that the instructions of the plaintiff's physi-

cians to the defendant's servants at this hospital were that this pad should be placed on the "warm" notch, so that a very small amount of heat would be generated in the pad, and the pad to be left on all night in that position without any harm being done to the patient, that the plaintiff did not have a special nurse but was attended by the floor nurses and interns of the hospital; that this electric pad was placed on the plaintiff's right leg by the defendant's employees upon instructions of the plaintiff's doctors, and while the plaintiff was under the influence of the opiate; that the pad is so constructed that when the "hot" position of the switch is turned on the pad gets extremely hot and will burn the flesh if it is allowed to come in contact therewith for more than a few minutes; that the switch was placed in the "hot" position; that no agent of the defendant examined the pad or came into the plaintiff's room to see how he was getting along until approximately eight o'clock the following morning, and that such pad remained on the plaintiff's leg in the "hot or high position" for such a length of time that it burned the skin and flesh and nerves of his right leg above the knee, producing the injuries sued for. The petition charged the defendant with negligence in having and retaining in its employ the servant and employee who placed the pad on the plaintiff's leg, and that such employee was incompetent, incapable, and careless, and was a student and not a graduate nurse, and was not properly trained to apply the pad to the plaintiff for the reason that she had not had the necessary experience and teaching to properly apply the pad, which was known to the defendant; in failing to furnish the plaintiff with a competent, capable, and careful employee to place the pad on his leg; in failing to carry out the instructions of the plaintiff's doctors to place the pad properly on the plaintiff's leg; in placing the pad thereon in the high or hot position "which was a dangerous condition of the said pad unless carefully watched;" in failing to inspect the pad after it was placed on the plaintiff's leg; in failing to investigate and examine such pad at frequent intervals during the night; and (7) "in allowing the plaintiff's leg to be burned and injured as alleged."

The defendant denied that it was negligent, and alleged that it carried out the instructions of the plaintiff's physicians and caused the electric pad referred to to be applied as instructed. The defendant demurred specially to the petition on the ground, among

others, that the allegations of the seventh ground of negligence "are conclusions and are specific and are based upon the assumption that the defendant is a guarantor," and such "allegations are not supported by sufficient allegations of fact." The judge overruled this ground and the defendant excepted pendente lite, and error thereon is assigned in the bill of exceptions.

The case proceeded to trial, and there was evidence introduced by the plaintiff tending to sustain the allegations of the petition. The jury returned a verdict in the plaintiff's favor for $3500. The defendant moved for a new trial on the general grounds, and by amendment added three special grounds. In special ground 1 the defendant contends that there was not sufficient evidence to support a finding that the defendant or its agent was guilty of any of the acts of negligence complained of, or that any of the acts of the defendant or its agent were the proximate cause of the plaintiff's injuries. In special ground 2 the defendant contends that the undisputed evidence shows that the plaintiff was a patient in the hospital operated by the defendant, and that while there he was under the care of and was being treated by his own physicians who were not the agents or employees of the defendant; that the plaintiff's physician ordered the defendant's nurses to apply electric pads to the plaintiff's right leg, and to keep them continuously applied, and such nurses of the defendant carried out these instructions as it was their duty to do, and any burns which may have been sustained by the plaintiff on account of such pads were caused by carrying out the orders of the plaintiff's physician, which orders, neither the defendant nor its agents charged with the duty of caring for the plaintiff as a patient, knew or in the exercise of ordinary care should have known would be likely to affect him adversely. In special ground 3 the defendant contends that the court erred in permitting a witness for the plaintiff to testify as follows: "I have had experience with these electric pads. I have myself used them on many occasions. I know of my own knowledge about a lady who used one of these electric pads constantly for three weeks. The position of the control on the pad was kept low. It did not burn her at all within the three weeks' time. In my own experience, I never saw one of the pads burn anybody on low. If it is put in the high position it would not be long before it would burn the skin and flesh. I should say in half an hour or an hour.

After that it would keep on burning." Movant contends the court erred in admitting this evidence for the reason that it was not shown by the plaintiff what kind of an electric pad the witness referred to; that the evidence in this case showed that there were several different kinds of electric pads; that the witness did not qualify as an expert; and that it did not appear whether or not the "lady who used one of these pads constantly for three weeks," had had bad circulation because of an occlusion.

The judge overruled the motion for new trial, and the defendant excepted.

■ The court did not err in overruling the special demurrer to the allegation of negligence that the defendant was negligent "in allowing the plaintiff's leg to be burned and injured as alleged." It was alleged that the servants of the defendant did not properly apply the electric pad to the leg; that in applying such pad they did not follow the instructions of the plaintiff's physicians; and that the employee who placed the pad on the leg was a student and not a graduate nurse, and was not properly trained for such purpose, in that she did not have the necessary experience and teaching to properly apply the pad to the plaintiff's leg. It was also alleged that the defendant, through its servants, was negligent in placing the pad on the plaintiff's leg in the high or hot position, "which was a dangerous condition of the said pad unless carefully watched," in failing to inspect the pad after it was placed on his leg, and in failing frequently to observe the pad and the plaintiff during the night. In these circumstances the allegations that the defendant was negligent "in allowing the plaintiff's leg to be burned and injured as alleged" was not a conclusion, and was not unsupported by sufficient allegations of fact. Such allegation did not place the defendant in the category of a "guarantor" of the plaintiff against injury while a patient in the hospital.

■ The court did not err in permitting a witness for the plaintiff to testify that she had had experience with "these electric pads;" that she had herself "used them on many occasions;" that she knew of her own knowledge about a woman who used one of "these electric pads," on which the control switch was kept at the low position constantly for a period of three weeks, and that such pad did not burn this woman at all within such period; and to testify that "In my own experience I never saw one of the pads

burn anybody on low," and that if the pad is placed in the "high" position it would burn the skin and flesh in half an hour or an hour. The defendant objected to this testimony on the ground that it was not shown what kind of a pad the witness was referring to; that there are various kinds of pads; and that the witness ought not to be allowed to tell of her experience with some pad which might not have been like the pad which it is claimed burned the plaintiff. The witness was not testifying as to her opinion as an expert, but was testifying as to her experience, and of what she knew as the result of her experience with "these electric pads" relative to the likelihood of such pads burning human flesh if kept on the high position when applied thereto, and in the course of her testimony she testified of her own knowledge about a woman who had used one of these pads for a period of time, that during this period it was kept on the low position, and that it did not burn the woman. The witness was not testifying as to a situation beyond the realm of common experience and as to which special skill or knowledge would be necessary. A non-expert witness, may, however, give his opinion as to the safety or danger of a particular appliance where, from familiarity with it or by reason of having seen it operated, he has gained a personal knowledge thereof. The jury were entitled to have the benefit of the experience of this witness with electric pads. The objection that the witness should not be allowed to tell of her experience "with some pad which might not be like the pad in question," in that there are various kinds of electric pads, is not well taken. The witness testified that she had "had experience with these electric pads" and "had used them on many occasions."

■ There was evidence from which the jury might find that the attendants and nurses of the defendant hospital did not properly carry out the instructions and directions given to them by the plaintiff's physicians, relative to the placing of the electric pad on the plaintiff's leg, and to the amount of current applied to the pad. There was evidence from which the jury might find that the plaintiff's leg was burned as the result of the electric pad being placed on his leg with the switch turned on in the high position and kept in that position during the entire night. The jury might well have found that had the electric pad been placed on the plaintiff's leg in the low position, as directed by his physicians, and had the attendants and nurses of the defendant hospital in charge, main-

tained the proper observation of the plaintiff and of the electric pad on his leg during the night, his leg would not have been burned. The plaintiff was administered a heavy opiate to produce sound sleep, and the nurses and attendants of the defendant knew this, and knew that the plaintiff, in his drugged condition, would likely thresh about and might displace the pad, and also knew that one in his drugged condition would not feel the heat and burning of the pad; and the jury was authorized to find from the evidence that had the servants of the defendant attended the plaintiff during this night with the proper care and diligence his leg would not have been burned.

It is well settled that the owner or proprietor of a private hospital or sanitarium which is operated for profit and not for charity is liable for injuries to patients due to the negligence of nurses or other employees. 22 A. L. R. 341. A private hospital operated for pecuniary profit owes to the patient the duty to use reasonable care for his safety, and reasonable skill and diligence in nursing and caring for him. It is the duty of those in charge of the hospital to give the patient reasonable care and attention, and to have that knowledge of the necessities of the case which would result from such care and attention and from the possession of ordinary skill in his treatment; and the patient is generally admitted to such a hospital under an implied obligation that he should receive such reasonable care and attention for his safety as his condition may require. See 22 A. L. R. 343 and cit.; 39 A. L. R. 1432.

4. The evidence supported the verdict. No error of law appears from the ruling of the court on the demurrer or in the admission of evidence. The verdict was not excessive. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Sutton and Felton, JJ., concur.*