33175. ATLANTIC COAST LINE RAILROAD CO. *v.* BROWN, executrix.

Decided September 19, 1950. Rehearing denied October 30, 1950. Adhered to on Second Rehearing December 15, 1950.

Alston, Foster, Sibley & Miller, William B. Spann Jr., James E. Thomas, for plaintiff in error.

Nall & Sterne, Walter G. Cooper, contra.

GARDNER, J. 1. The first two special grounds of the defendant's motion for a new trial are but amplifications of the general grounds.

The succeeding two special grounds, namely special grounds six and seven, complain of the failure of the trial judge to give in charge to the jury the following timely written requests to charge: "The duty of a master to warn his servant of danger incident to his employment does not require the master to anticipate that his servant may improperly perform his task in a particular manner and warn him of an obvious danger resulting from such improper method of performing his task," and "if the defendant did not know that Mr. Brown was standing with his leg cocked at an angle it was under no duty to warn him of his·danger and your verdict would be for the defendant."

There is no merit in these special grounds. No such error appears as would authorize this court to reverse the judgment overruling the defendant's motion for a new trial. A request to charge must embody a correct, applicable and complete statement of law, and be so couched as not to have a tendency to confuse and mislead the jury and to becloud the issues. While a request may embody a correct statement of some principle of law, often the failure to give the same in charge to the jury will not authorize the grant of a new trial, as where the failure so to charge the jury did not tend to harm and prejudice the appellant, or where the principle of law therein contained was adequately covered in the charge of the court as given or where the principle was not entirely applicable.

The court charged the jury that the plaintiff contended that the railroad company was liable because it failed to warn her husband who was a new employee, as to the danger of his standing in the gangway of the locomotive; that the engine was going around a curve; that it was dangerous for him to stand where he was and that a man standing between the tender and the engine could be pinched as such curve was rounded by the train. The court also charged the jury that the defendant railroad company contends that it had no knowledge of ‚the posture of the plaintiff's husband as he stood in said gangway; that it did not know that he had cocked his leg with his foot resting on the tender and his knee in close proximity to the cab, and that it was under no duty to give such warning as contended by the plaintiff. The court also charged the jury that in order to create a duty of warning and instructions, the danger must be one that is known to the employer and unknown to the employee, there being no duty of warning or instructions, if it is obvious or if the employee possesses knowledge of the risk to which he is subjected. The trial judge instructed the jury that if the employee "subjected himself by standing in the gangway in the position testified to, was obvious or known to him, the plaintiff can not recover, provided you believe there was no negligence on the part of the defendant." The jury were sufficiently instructed on this subject. No harmful and prejudicial error, requiring the grant of a new trial, appears from either ground six or ground seven.

It is true that the law does not require that a master or employer anticipate that his servant or employee will perform a task in an improper manner and in so doing expose himself to danger, and that the employer will not be held liable where the employee's injury was caused by his own improper performance of a task for his master. It is never to be presumed that a person will commit a wrongful act or will act negligently or improperly. Nothing to the contrary appearing, it is to be assumed always that a person will act in a proper manner—will do that which he must do in the right way.

2. The defendant railroad company contends that the verdict in this case was excessive. It sets up in the 8th special ground that the "sum agreed upon by the jury ($22,000)  . .

is so vastly at variance with all evidence of damages . . as to show that the verdict is a grossly unfair allowance in the particular circumstances . . and justifies the inference of gross mistake or bias or prejudice or sympathy on the part of the jury." The defendant railroad contends that the amount of this verdict is "completely" contrary to the evidence of damage. It says that this is so because, under the testimony of the plaintiff, it appeared that her husband had recovered from the injury suffered by him previously and the testimony of three of the four doctors who testified showed conclusively and unequivocally that her husband's subsequent illness which resulted in the amputation of his leg and then in his death could not have resulted from the injury charged. In support of this ground, the defendant further sets out that the only medical evidence undertaking to connect the plaintiff's husband's illness and his subsequent death with the injury on which this suit was based was testimony based upon possibility and the railroad contends "that such testimony was of very slight probative value and was insufficient to establish the fact of causation in the face of the positive testimony of the other witnesses. Movant further avers that a failure to set aside a verdict of such size, under all the facts and the evidence in this case, would constitute an abuse of discretion by this Honorable Court."

Regardless of whether the positive evidence showed or established conclusively and unequivocally that the illness of the plaintiff's husband which necessitated the amputation of his leg and then caused his death, could not have been caused by or resulted from the injury to her husband's leg sustained when the train rounded said curve in the spur line of the defendant, the jury were authorized to find that the injury received by the plaintiff's said husband to his leg as the train rounded this curve, tended to and did greatly aggravate the diseased condition of his leg and did so to such an extent as to have been instrumental in subsequently hastening if not causing his death.

It cannot be said that there is no evidence to support the verdict. If there is any evidence upon which the jury might hinge their finding, and this evidence is competent and legal, this court will not ordinarily disturb a verdict that has the approval of the trial judge.

Under the facts $22,000 is not as a matter of law an excessive amount, and this case will not be reversed for that reason, there being some evidence legally before the jury which tends to support the verdict. Brown was a comparatively young man. Furthermore, the suit seeks also to recover damages for the pain and suffering inflicted upon Brown by reason of having his leg mashed between the tender and the engine cab, and his personal representative is entitled to recover therefor in this action. The suit was pending therefor when Brown died, and his personal representative, Mrs. Mary E. Brown, executrix of the estate of her deceased husband, was made a party plaintiff in his stead and the suit proceeded in her name as such personal representative, and also it was sought to recover damages for the death of Brown.

This court has made a careful examination into the numerous outside authorities cited by counsel for both parties, and after consideration thereof, this court does not feel that the verdict for $22,000, is under all of the facts and circumstances, excessive or the result of bias and prejudice, under any theory presented.

3. In the ninth special ground of its motion for new trial the defendant railroad company assigns as error a long excerpt from the charge of the court as follows: "On the other hand, gentlemen, if you should find that the defendant is liable for damages, then you would go into the question of damages and determine how much should be awarded in this case on the various specifications of damages claimed.

"The first specification of damages claimed, gentlemen, is one claimed in the original petition by Mr. Brown himself, that is, that due to the injury received on this occasion that he lost time from his work and consequently lost money, and he sets up in his petition the amounts he claims that he has lost. You will look to the evidence if you believe that he is entitled to recover in this case, and if the evidence shows that he lost time from his work due to this injury and consequently lost money, and showed with a reasonable certainty the sum of money that he thus lost, this sum should be awarded as damages, if you believe he is entitled to recover in this case.

"And then, gentlemen, in the original petition, the plaintiff

claimed that by reason of the injury that he suffered at this time, that he underwent mental pain and suffering. He says that he suffered great pain and it continued for a length of time, and he asks for damages by reason of pain and suffering. And this is a legitimate item upon which damages may be awarded, provided you believe he is entitled to recover. You would determine the sort of injury that he received; its character as to producing pain, the mildness or the intensity of the pain, its probable duration, how long it continued, how long he suffered, and then desiring to be fair and just to both parties. You would award as damages, if you believe there should be a recovery in this case, just such sum as you think would be fair pay or compensation for the pain and suffering due to the injury received on this occasion which was sustained and which Mr. Brown, underwent.

"As to the amount, gentlemen, the law declares there is no standard by which to measure it except the enlightened consciences of impartial jurors. And I charge you, gentlemen, that damages are given as compensation for the injury done, and this is a measure when the injury is of a character capable of being estimated in money, that is, when the law permits damages to be recovered in a case like this it seeks to give fair pay and compensation for the injury done. And you will keep this rule in mind in passing upon the specifications of damages.

"Now, gentlemen, those are the damages which are sought in the original petition.

"Now, Mrs. Brown, as the administratrix [executrix] of the estate of her deceased husband and mother of her minor children, is seeking damages for herself and her minor children. And I instruct you that the action as set forth in count II is brought for the benefit of the surviving wife and minor children of the deceased, and that the measure of damages in such case is the financial benefits which would be expected from the decedent to the widow and children in a pecuniary way. The damages are such as flow from the deprivation of pecuniary benefits whatever benefits would reasonably have arisen if the decedent had not died from his injuries.

"In considering the law as to pecuniary benefits of the wife and children, the jury may also consider, in the case of the chil-

dren, the loss of care, counsel, training and education which each child would, under the evidence, have received from the parent, and which could only be supplied by the services of another for compensation; and in such case, the jury would fix the money value of the loss of such care, training, counsel and education which the deceased would have bestowed upon each child had he lived.

"Now, gentlemen, there has been introduced a mortality table for the purpose of enabling you to have some light upon the question of how long the decedent might have lived. Such table is not binding upon you, but you may use it, if applicable and if you do use it the mortality table is only designed for the purpose of giving the expectancy in years of persons at given years.

"If you find for the plaintiff, and if you find that the decedent's life was of financial benefit throughout his whole expectancy to his wife, and children, during their minority, then you would decide upon the amount of that benefit to the wife and each child throughout the [life] expectancy of the wife and throughout the minority of each child. If the wife's expectancy is greater than that of her husband, then you would consider only the husband's expectancy in your calculations. If the wife's expectancy is less than the husband's then so far as the benefits to the wife, are concerned you would consider the decedent's earnings only during the expectancy of the wife.

"When you decide upon the amount of pecuniary benefit which the decedent's life would have been to his wife, and also what it would have been to his children during their minority under instructions already stated, it would not be proper to give the gross amount of those benefits in the verdict which you render in the case, because inasmuch as the same is paid down all in cash, the amount would have to be reduced to its present cash value, and the present cash value will be a considerable less sum than the gross amount would be.

"You are instructed that the present cash value of future benefits of which the beneficiaries may have been deprived by the death of the decedent, making adequate allowance, according to the circumstances for the earning power of money, when investigated by an ordinarily prudent person at the highest rate of interest at which the same could be safely invested, is

the proper measure of damages in an action of this character. In determining what rate of interest you should find under the rules given you in charge that money will bring, and what rate of discount shall be used by you in reducing this amount to its present value, you would consider all the facts and circumstances of the case. Local conditions are not to be disregarded, nor should the discount necessarily be at what is commonly called the legal rate of interest. It may be that such rates are not obtainable upon investment upon such securities without the exercise of financial experience and skill. The compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill. It is a matter for you to decide as to what the earning power of money at this place and this time on safe investments would be. You are authorized to make the calculation reducing the sum found by you to its present value by any proper method of calculation. In other words, whatever the annual loss by these beneficiaries might be throughout the expectancy of the decedent, in your opinion or throughout such part of his expectancy as you decide that these beneficiaries would receive annual benefits, the same would be reduced to its present cash value upon the rate of interest which you fix as reasonable and right under the circumstances of the case as I have just explained to you. However, as to the children, whose rights to benefits, if you find that the decedent's life would be of benefit to the children, would exist until each child is 21 years old, you should reduce such benefits as each child might receive, to their present cash value, on the basis of its receiving those benefits annually during the remainder of its minority, using the rate of discount which you decide upon in this case, and you would have to make such mathematical calculation as would reduce these annual amounts so accruing during each child's minority, provided you find that they would live until they reached the age of 21 years, to their present cash value. Likewise, if you find the wife's expectancy to be less than the expectancy of her husband, then you would allow only such benefits for such time as you find the expectancy of the wife to be, and you would reduce such amounts for the period which you find the wife would receive them to their present cash value, at the rate of interest you decide upon. In reducing these sums

to their present cash value, you may use any reasonable method of calculation in determining that question. The theory of the law is to give such sum as put out at what you find to be the proper rate of interest which the beneficiaries could secure on safe investments at this time and place, would earn the amount of these future installments which you find the beneficiaries would have received had the decedent lived, and by taking off a part of the principal each year, would, at the end of such time as those annual benefits are estimated on, be entirely exhausted.

"In estimating the earnings of a man, it rarely, if ever, happens that a man labors every day until his death, or receives all the while a fixed and regular income from his labor; nor does his capacity to earn money often remain undiminished to old age. In arriving at what you might find to be the earnings of deceased, which is one of the steps you will have to take in determining the rate of pecuniary benefit his life would be to the beneficiaries, you should take all those things into consideration; feebleness of health, actual sickness, loss of employment, voluntarily abstaining from work, dullness in business, reduction in wages, increasing infirmities of old age, the age of decedent, his health, his occupation, whether dangerous or not, and other causes which appear to you from the evidence; they contribute, in a greater or less degree, to decrease the earnings of a lifetime. In estimating what a man might earn throughout his expectancy, a proper allowance and deduction should be made in favor of the defendant for any diminution in income from labor which would have resulted from any of these causes.

"Now the wife, gentlemen, would not have a right to recover anything for grief, loss of companionship of her husband growing out of the peculiar relationship of husband and wife. The only actual pecuniary loss that she sustained by the death of her husband would be the recovery, if any. [?] The children would have a right to recover their actual money or pecuniary loss resulting from the death of their father up to the time that they are 21 years old. The wife's recovery would be her loss during the joint life of herself and her husband if he had not been killed, provided there should be any recovery at all.

"And gentlemen, if you award damages and you arrive at a sum which should be awarded in this case, and you believe that

the plaintiff's husband was guilty of contributory negligence and that there should be a diminution of the amount awarded, it is your duty to reduce the sum of the present cash value so much as would be proportionate to the degree of negligence attributable to the plaintiff's husband and to the children's father. If you do not believe he is guilty of any contributory negligence, then the sum ascertained in the way I have told you would not be so reduced, but if you believe he was, it would be your duty to reduce it and the sum to which you reduce it would be the sum representing the verdict in that classification, or these classifications, of damages, provided you should feel there should be a recovery in this case.

"So, gentlemen, if you award damages in this case, as I have called to your attention, you could award, if you saw fit, damages for loss of time, for pain and suffering and damages to the wife and to the children to which I have called your attention and instructed you. But you would not find a verdict, if you find for the plaintiff, on these various sums, but you would lump your verdict, and your verdict would be in one sum. And the form of your verdict, if you find for the plaintiff, would be, 'We, the jury, find for the plaintiff so many dollars,' lumping those various sums, if you find on one or more of them as damages. If you do not believe there should be a recovery in this case, gentlemen, the form of your verdict would be, 'We, the jury, find for the defendant.' "

Objections to the said charge are as follows: "Movant avers that such charge was erroneous and injurious to him because:

"(a) The charge was argumentative for in that portion of the charge on the second count the statement appears: 'The damages are such as flow from the deprivations of pecuniary benefits whatever benefits would reasonably have arisen *if the decedent had not died from his injuries.*' (Italics supplied.) In that the evidence was in sharp conflict as to whether the deceased died of his injuries and, in fact, the only evidence to that effect was based only upon probability or possibility and the entire charge upon damages, herein excepted to, including the portion just quoted, argues and assumes that the deceased did die of his injuries and so states.

"(b) The charge was confusing to the jury, in that it charged

upon count II that if the jury found for the plaintiff it would then apply certain rules to determine the value of the life of the deceased, without in any way limiting such portion of the charge by requiring that the jury find that the decedent's death was occasioned by the injuries sustained.

"(c) The charge was misleading to the jury in that it indicated that upon the second count the jury must simply find for the plaintiff, that is that it must find liability on the part of the defendant and did not, anywhere in the charge, take into consideration the conflicting testimony as to whether or not plaintiff's amputation or his death set out in the second count resulted from the injury sustained and failed absolutely to charge that if the jury found that his amputation and death did not result from the injury sustained that he could not recover damages as set out in the charge concerning damages.

"(d) The charge was also erroneous in that several elements of damages were claimed in the two counts of the petition and there was a dispute and the evidence was in sharp conflict relative to the nature and extent of the injury and as to the cause of the illness which resulted in the amputation and subsequent death of the deceased, and it was error, as movant contends, for the court to limit and confine its instructions to the method of determining the value of the life of the deceased, without explaining or qualifying said charge with regard to the above stated conflict in the evidence."

Thus, briefly, it is contended by the defendant that the above charge was argumentative in that a portion thereof contained this language—"the damages are such as flow from the deprivation of pecuniary benefits whatever benefits would reasonably have arisen if the decedent had not died from his injuries"; because such charge was confusing to the jury wherein it instructed them as to ascertaining the value of the life of the plaintiff's husband; because it was misleading to the jury in that it instructed the jury in effect that they must find for the plaintiff on the second count; and because several elements of damage were claimed in the two counts of the petition and it was error for the court to limit and to confine its instructions as to determining the value of the life of the deceased, without explaining such charge with regard to the sharp conflict in the evi-

dence. Portions of this long excerpt are attacked by the defendant and the excerpt as a whole is only assailed as error because of the various portions thereof so attacked. Some of this long excerpt is not attacked as incorrect, and is not incorrect. This court will not consider a ground of a motion for new trial which attacks as contrary to law a very lengthy excerpt from a charge a part of which is correct and contains applicable principles of law. Therefore, considering the charge as a whole and the evidence in the case, the assignments of error in this special ground show no cause for reversal. *Louisville & Nashville R. Co.* v. *Bean*, 49 *Ga. App.* 6 (4) (174 S. E. 209).

4. It is urged by the plaintiff in error, the defendant railroad company, that the decision of this court in this case upon the exceptions to the grant of a nonsuit was not correct as to the findings of fact made by this court and that "there can be no doubt from the entire record of the proceedings in the second case that certain findings made by the court in its early opinion are incorrect." Right or wrong, the rulings of this court when the case was here before (See *Brown* v. *A. C. L. R. Co.*, 79 *Ga. App.* 56) are binding and constitute the law of this case. However, we adhere to these rules and insofar as the same are essential to a decision of the errors assigned in the present motion, reiterate the same. The gist of this case was not that the roadbed or track of the defendant along the line of this spur was faulty or in a "bad condition"; this was one of the contentions of the defendant and one of the theories involved. The case turned upon whether the defendant was negligent and consequently liable to the widow of the deceased employee, because of the failure to warn and caution the plaintiff's husband that there was a sharp curve in this spur track, that this caused the gangway between the engine and the tender to close so that a person standing in this gangway on the side which would naturally come together or pinch upon rounding this curve, would be in a precarious position, or situation when the train rounded the curve and would likely be caught between the engine and the tender unless such person moved from that position before the train entered upon said curve. As we have seen, upon the former ruling in this case, it was the duty of the defendant through its servants in charge of said train, who were familiar with this

902

spur track, to have warned the plaintiff's husband and informed him of this curve.

5.   A verdict for the plaintiff was legal and authorized by the evidence, and followed the decision in this case when it was first before this court.   As we have ruled, the verdict was not excessive and no error of law appeared.   It follows that the trial court did not err in overruling the defendant's motion for a new trial, as amended.

*Judgment affirmed.   MacIntyre, P.J., and Townsend, J., concur.*

## CORRECTION.

Page 108, lines 9 and 12 from top: substitute the word "sustaining" for the word "overruling."