39636. PORTER, Next Friend v. PATTERSON et al.
39658. EMORY UNIVERSITY v. PORTER et al.

DECIDED SEPTEMBER 25, 1962—
REHEARING DENIED NOVEMBER 29, 1962.

*M. Neil Andrews, James M. Roberts,* for plaintiff in error (Case No. 39636).

Hugh E. Wright, Hansell, Post, Gardner, Brandon & Dorsey, J. Corbett Peek, Jr., contra.

J. Corbett Peek, Jr., for plaintiff in error (Case No. 39658).

M. Neil Andrews, James M. Roberts, Hansell, Post, Gardner, Brandon & Dorsey, Hugh E. Wright, contra.

CARLISLE, Presiding Judge. These cases are related to the case of Emory University v. Porter, 103 Ga. App. 752 (120 SE2d 668), which involved an earlier appeal by Emory University from an order overruling its motion to dismiss the petition. After the decision in that case and before the remittitur was made the judgment of the trial court, the plaintiff amended her petition, substantially changing the allegations of fact therein respecting the liability of the hospital and of Dr. Joseph H. Patterson. The trial court sustained the general demurrer of Dr. Patterson and dismissed the case as to him, and the exception in Case No. 39636 is to that judgment. At the same time the trial court passed on the renewed and additional demurrers of the defendant Emory University, overruling the general demurrer and some of the special demurrers and sustaining other of the special demurrers and further reciting that because of its ruling sustaining certain paragraphs of the demurrers, it was not necessary to rule on other enumerated paragraphs thereof. The defendant Emory University in Case No. 39658 assigns error on so much of that order as was adverse to it.

Insofar as is material to the question here presented, the petition as finally amended alleged that plaintiff's father, in accordance with instructions previously given by Dr. Patterson, brought her to the Crawford W. Long Memorial Hospital (operated by Emory University) and turned her over to a nurse in charge of the ward. Thereafter Dr. Patterson arrived and directed that plaintiff be prepared for a blood change-over operation, and thereupon plaintiff was taken by the employees of the defendant hospital to the operating room and placed in an incubator owned and controlled by the hospital, and by said employees was immobilized therein by being strapped down. In so doing, said employees placed plaintiff's left foot in a position where it touched a 150 watt electric light bulb in the incubator, which had not been turned off or removed from the incubator in ac-

cordance with proper operating procedure. The incubator had a cover with an opening in the center of the said cover left to allow the physician to perform the required operation, but the cover which was placed over the incubator concealed the 150 watt light bulb from observation by anyone until or unless said cover was removed, and after plaintiff had been so placed in the incubator Dr. Patterson came into the operating room and proceeded with the operation on plaintiff without removing the cover on the incubator or making any inspection to determine whether plaintiff was properly placed in the incubator and protected from the heating units used therein. It was further alleged that the light bulb referred to was placed in the incubator for the purpose of preheating it and under proper operating procedure the bulb would have been turned off prior to the time the plaintiff was placed therein; that when properly operated the incubator is heated while the patient is therein by light bulbs in the lower part below the mattress and floor of the incubator which insulate and protect the patient from contact with such bulbs; that as a result of plaintiff's foot being allowed to remain in contact with the said lighted bulb during the course of the operation for a period of some one and one-half to two hours she sustained burns to her foot which ultimately necessitated the amputation of three-fourths of it, for which she sues.

The defendant, Dr. Patterson, was alleged to have been negligent (a) in failing to remove the cover of the incubator when he entered the operating room to determine whether plaintiff was properly placed in said incubator and whether the preheating 150 watt electric bulb was turned off; (b) in failing to test the incubator with an independent thermometer prior to performing the operation to determine whether excess heat was being produced; (c) in failing to make an inspection to determine whether or not parts of plaintiff's body had been placed in a position to be burned by the heating units contained in the incubator; (d) in failing to request the employees of the defendant hospital to make such an inspection; (e) in failing to test the incubator with an independent thermometer so as to use the proper heat and not burn the sensitive skin of a new-born infant; (f) in failing to place a shield of heat-resistant material between

plaintiff's foot and the light bulb; (g) and, in neglecting and omitting to make close and continuous observation of plaintiff during the course of the operation so as to prevent injury to plaintiff.

The petition, as finally amended and as it stood after the trial court sustained certain special demurrers to paragraph 31 of the petition, alleged that the defendant hospital was negligent in the following respects: (a) In that its agents and employees failed to turn off said preheating 150 watt electric bulb prior to placing said infant in said incubator. (c) In placing said infant in said incubator and immobilizing said infant with her foot touching said preheating 150 watt electric bulb. (h) In failing to provide, when placing said infant in said incubator, a shield made of asbestos, or other heat-resistant material between the foot of said infant and said preheating 150 watt electric bulb. (j) In failing to warn defendant, Dr. Joseph H. Patterson, when he came into the operating room that said 150 watt electric bulb was still burning and that said infant had been immobilized in said incubator with her foot touching said bulb.

■ The general demurrers of the defendants, when considered together, present for the court's determination the question of what negligence and whose negligence constituted the proximate cause of the plaintiff's injuries, for it must be conceded that for the purpose of passing on the general demurrer, and taking the allegations of the petition as true, the plaintiff's injuries resulted from the negligence of someone, and that under the facts alleged the plaintiff has a cause of action against either one or both of the defendants. This is true because the plaintiff had a right to be secure in her person and to be protected from negligent injury while she was a patient in the defendant's hospital, and because of her tender age she, of course, cannot be guilty of any contributory negligence in any way contributing to her injury. The negligence question thus presented bears two facets, that is, first, the primary negligence of the persons actually strapping the plaintiff in the incubator with her foot touching a 150 watt electric light bulb for which either the defendant hospital or the defendant physician must be responsible upon the application of the maxim of respondeat superior, and the

secondary alleged negligence of the defendant physician in failing to ascertain the situation in which the plaintiff had been placed in the incubator and to correct or remedy that situation brought about by the primary negligence of the persons actually performing the task of strapping the plaintiff in the incubator.

With respect to the primary negligence above referred to, it is contended by counsel for the hospital in their argument before this court that the hospital is not liable for the acts of nurses or other personnel performing duties directed by a private physician or surgeon in connection with an operation and that the employees of the hospital in performing the task of strapping the plaintiff in the incubator and preparing her for the operation were acting as agents and servants and under the control and direction of the defendant Dr. Patterson and were not performing any task as agents and servants of the defendant hospital.

With respect to this contention, the Georgia cases which have touched on this question have settled the proposition that "the owner or proprietor of a private hospital or sanitarium which is operated for profit and not for charity is liable for injuries to patients due to the negligence of nurses or other employees. 22 ALR 341. A private hospital operated for pecuniary profit owes to the patient the duty to use reasonable care for his safety, and reasonable skill and diligence in nursing and caring for him." *Piedmont Hospital v. Anderson*, 65 Ga. App. 491, 497 (16 SE2d 90). No Georgia case has been called to our attention clearly enunciating the so-called "loaned servant" doctrine as applied to hospital employees performing services for a physician in connection with the treatment of a patient, and we must therefore look to other jurisdictions for statements of its principles in such a situation. In Swigerd v. City of Ortonville, 246 Minn. 339, 343 (75 NW2d 217, 72 ALR2d 398), the Supreme Court of Minnesota considered the question of whether nurses on the staff of a hospital were acting as hospital employees when, pursuant to the direction of an attending physician, they undertook to apply heat lamp treatments to a patient and in so doing allowed the heat lamps to come in too close proximity to the bed clothing, setting it afire and thus inflicting injuries proximately contributing to the death of the patient. There it was contended

that in performing this duty for the attending physician the hospital employees were rendering medical treatment and as such were acting as the agents and servants of the physician and not of the hospital. In disposing of this contention adversely to the hospital the court said: "Whether the assignment by the hospital of one of its nurses to the care of a patient involves a surrender of control to the attending physician so that the hospital ceases to be responsible for the negligent acts of the nurse can best be ascertained in the light of the recognized function of a modern hospital and the generally accepted limitations on a physician's time. A physician can spend only a short time at the bedside of each patient and he must therefore leave the actual fulfillment of his prescribed treatment to others less skilled. If this were not the accepted practice, no person of moderate means could afford to employ either a specialist or a general practitioner. [See Hunner v. Stevenson, 122 Md. 40, 89 A 418; Annot., 60 ALR 147, 150]. A patient enters a hospital in reliance upon the reasonable assumption that its trained staff of nurses, its responsible supervision, and its special equipment will insure him a higher standard of care in administering to his needs as his physician may prescribe. If this assumption were not justifiable, the patient might just as well stay at home during his illness. Clearly, a hospital has a greater responsibility for the welfare of its patients than merely to maintain a pool of trained nurses from which the various attending physicians may select their assistants. Many courts have increasingly recognized that a hospital has a responsibility for the exercise of due care by a nurse (as well as by other hospital employees) while she is performing acts of a character which, though constituting a part of the patient's treatment as prescribed by the attending physician, do not require either the application or the understanding of the specialized technique possessed by a skilled physician or surgeon. [See Dillon v. Rockaway Beach Hospital, 284 NY 176, 180, 30 NE2d 373, 374; Rabasco v. New Rochelle Hospital Ass'n., 266 App. Div. 971, 44 NYS2d 293, 294; Pivar v. Manhattan General, 279 App. Div. 522, 110 NYS2d 786; Flower Hospital v. Hart, 178 Okla. 447, 62 P2d 1248; Rice v. California Lutheran Hospital, 27 Cal. 2d 296, 163 P2d 860; *Piedmont Hos-*

*pital v. Anderson*, 65 Ga. App. 491, 16 SE2d 90; Clerk & Lindsell, Torts (11th ed.) § 619 (containing summary of holdings of British decisions); cf. Malkowski v. Graham, 169 Wis. 398, 172 NW 785, 4 ALR 1524, and Olson v. Bolstad, 161 Minn. 419, 201 NW 918.] In taking this view these courts classify the acts of nurses and other employees for which a hospital is liable in tort as administrative or clerical acts, and the acts for which it has no such liability as those which require an exercise of medical skill or judgment. [See 41 CJS, Hospitals, § 8, p. 348.] Whether an act is merely administrative, so that negligence in its performance is imputed to the hospital, or nonadministrative depends on the nature or character of the act. [Dillon v. Rockaway Beach Hospital, 284 NY 176, 180, 30 NE2d 373, 374; Ranelli v. Society of New York Hospital, 49 NYS2d 898.]

"No all-embracing definition of what acts are administrative will be attempted but a few illustrations from actual cases will suffice to disclose their nature. It has been held that the order of an attending physician that sideboards be placed on a bed for the patient's protection is a medical determination for which the hospital is not responsible. In contrast, however, the physical or manual act of attaching the sideboards, in compliance with that order, is merely an administrative act since it can be performed by anyone in the hospital's employ and its performance requires no professional knowledge, skill, or experience. [See Pivar v. Manhattan General, 279 App. Div. 522, 110 NYS2d 786; Ranelli v. Society of New York Hospital, 49 NYS2d 898.] Similarly, where a doctor ordered that his patient be served tea, the negligent serving of the tea whereby the patient was painfully burned, was an administrative act for which the hospital was liable in damages. [Rice v. California Lutheran Hospital, 27 Cal. 2d 296, 163 P2d 860.] In the case of Flower Hospital v. Hart, 178 Okla. 447, 62 P2d 1248, the court based liability on the fact that the surgeon, following an operation, had ceased actual supervision and control over a nurse who placed an unshielded light bulb on the flesh of the patient whereby she was burned. In *Piedmont Hospital v. Anderson*, 65 Ga. App. 491, 16 SE2d 90, a doctor ordered an electric heating pad to be applied to the patient. In carrying out the order the nurse applied

the heating pad with the switch on hot instead of on low which would have been proper. The patient was burned. In so doing the court said she was acting as a servant of the hospital and that the hospital was responsible for her negligence since she did not properly carry out the instructions of the patient's physician. These cases illustrate administrative acts for which a hospital is liable for the negligence of its nurses and, by necessary implication, these cases carry with them a recognition that control remains with the hospital when its employees perform nonmedical acts. Where no unusual features are involved which call for an exercise of medical skill or experience, a doctor may reasonably take for granted that the experienced nurses on the staff of a modern hospital will attend to their ordinary and customary duties without detailed instructions. See, Annotation, 4 ALR 1527."

Accordingly, following the lead of the Minnesota Supreme Court, "we adopt the rule that a hospital is liable for the negligence of its nurses in performing mere administrative or clerical acts, which acts, though constituting a part of a patient's prescribed medical treatment, do not require the application of the specialized technique or the understanding of a skilled physician or surgeon. This rule, in recognizing that the right of control remains with the hospital as the general employer, is consistent with the nature of such acts and is in accord with the custom which in everyday practice governs the relationship between the hospital staff and the attending physicians." Applying this rule to the facts as alleged by the amended petition in the instant case, it is clear that the acts of the hospital employees in preparing the incubator to receive the plaintiff, in preheating it with an electric light bulb and in actually placing the plaintiff therein and strapping her down were merely administrative or clerical acts which involved the application of no specialized technique or understanding of a skilled physician or surgeon. Under the allegations of the petition, these acts were not performed under the immediate personal supervision of the defendant physician, but were performed in his absence and they were merely routine acts within the scope of the duties of the hospital employees, and in the performance of such acts the hospital

employees did not become loaned servants of the defendant physician. Their negligence as alleged in the petition was imputable to the hospital, and the hospital is liable therefor under the maxim of *respondeat superior*. The trial court did not err in overruling the general demurrer of the defendant Emory University.

■ In its order the trial court overruled nine special demurrers of the defendant, sustained other grounds of special demurrer and declined to pass on 16 other grounds of special demurrer because it deemed a ruling on them unnecessary in view of the demurrers which had been sustained. The plaintiff in error in Case No. 39658 assigns error on the overruling of the demurrers and on the refusal of the court to pass on the others. With respect to those grounds of demurrer which the court refused to pass upon it appears from the record that other grounds of demurrer which were sustained struck from the petition the particular paragraphs demurred to in the paragraphs not passed upon, and clearly the questions raised by those latter demurrers are moot so long as the order sustaining the other grounds of demurrer remains of force and effect. This is also true with respect to paragraph 3 of the demurrer attacking paragraph 17 of the petition which demurrer was overruled because it appears that paragraph 4 of the demurrer which also attacked paragraph 17 was sustained and that paragraph stricken. So, it becomes unnecessary to pass on the assignment of error on the overruling of paragraph 3 of the demurrer. With respect to the remaining grounds of special demurrer which were overruled it is only necessary to say that we have examined them and find no merit in them. The trial court did not err in overruling them.

■ Coming now to the assignment of error as contained in the bill of exceptions in Case No. 39636, this assignment of error raises the question of whether the petition states a cause of action against Dr. Patterson, the attending physician. As already observed, Dr. Patterson is not charged with any negligence in personally placing or supervising the placing of the plaintiff in the incubator or in strapping her down, but the sole basis upon which it is sought to fix liability on him is on account of his failure to make an inspection and ascertain the condition of

the plaintiff either before or during the performance of the operation.

"Negligence or breach of duty is not to be anticipated, but until the contrary is shown it is to be presumed that every man obeys the mandates of the law and performs all of his social and official duties." *Beavers v. Le Sueur*, 188 Ga. 393, 403 (3 SE2d 667). To the same effect, see *Suddath v. Blanchard & Calhoun*, 39 Ga. App. 262 (2) (146 SE 798). "It is never to be presumed that a person will commit a wrongful act or will act negligently or improperly." *Atlantic C. L. R. Co. v. Brown*, 82 Ga. App. 889, 892 (62 SE2d 736). "Where no unusual features are involved which call for an exercise of medical skill or experience, a doctor may reasonably take for granted that the experienced nurses on the staff of a modern hospital will attend to their ordinary and customary duties without detailed instructions. See Annotation, 4 ALR 1527." Swigerd v. City of Ortonville, 246 Minn. 339, 345, supra. In a case quite similar on its facts to the instant case, the Court of Appeals of Louisiana, in determining whether the acts of a physician in placing a new-born infant in an improperly prepared incubator was such an intervening cause of the injuries inflicted on the infant as to insulate the hospital from liability for the negligence of its employees in preparing the incubator, said: "The physician had the right to expect the incubator to have been properly conditioned and ready for use. To say the least, he had the right to expect a warning from those responsible if the proper condition did not exist. He testified that he did not examine the incubator; that he did not see the hot water bottles, but that he knew they were being used for heat and expected them to be there, properly tested and insulated." Cornell v. U. S. F. & G. Co. (La. App.), 8 S2d 364, 370. These holdings by the Supreme Court of Minnesota and by the Court of Appeals of Louisiana are consonant with the general proposition first stated, and following the rulings in those cases, we hold that, where the facts as alleged in this case show that the patient was entrusted by the physician to the care of hospital employees whose regular duty it was to prepare the patient for a contemplated operation by the physician, the preparation did not involve the application of specialized medi-

cal knowledge or skill, and where, when the physician arrived in the operating room he found the patient apparently ready for the operation and no fact appeared to put him on notice of any neglect or omission on the part of the hospital employees in making such preparations, the physician was entitled to rely upon the proper performance of those duties by the hospital employees, and was not required, in the exercise of ordinary care, and, in the absence of some fact or circumstance putting him on notice that such duties had been negligently or improperly performed, to make any inspection or to review the performance of such duties by the hospital employees before proceeding with the operation. Morrison v. Henke, 165 Wis. 166 (160 NW 173); Davis v. Trobough (Mont.), 363 P2d 727, 729.

It follows that the petition failed to state a cause of action against the defendant Dr. Patterson and that the trial court did not err in sustaining the general demurrer and in dismissing the action as to him.

*Judgment affirmed. Eberhardt, J., concurs. Russell, J., concurs specially.*

RUSSELL, Judge, concurring specially. The majority opinion holds that a physician is not negligent in failing to inspect the work of administrative staff hospital personnel where the performance of such tasks does not involve the exercise of medical skill or experience, but courts cannot decide as a matter of law which of the interrelated functions of the physician and the hospital involve such skills and which do not. I therefore feel the need to erect a caution signal lest this decision be taken as making such a distinction as a matter of law rather than of fact.

The case is here simply on the sufficiency of the pleadings. In analogous fact situations, a pleader may allege negligence against a physician of a primary nature based on malpractice or based on ordinary negligence, or he may allege negligence of a secondary nature amounting to either of the above in failing to anticipate and guard against the negligence of another. In the first instance, malpractice, the facts must show that the negligence consists in failing to "bring to the exercise of his profession a reasonable degree of care and skill." *Code* § 84-924; *Fincher v. Davis*, 27 Ga. App. 494 (5) (108 SE 905). This form of

negligence, being a medical question, requires for its proof the testimony of medical experts (*Shea v. Phillips*, 213 Ga. 269 (2), 98 SE2d 552). Likewise, proper pleading requires, not a lay conclusion that the act was negligent, but sufficient factual averments to sustain the premise that the conduct is equivalent to a lack of legally required care and skill; otherwise the petition is not good even against general demurrer. *Bryan v. Grace*, 63 Ga. App. 373 (1d) (11 SE2d 241). This petition contains no allegation that the physician's act of omission is a failure to exercise such care and skill, and contains no facts on which such inference could properly be drawn as against general demurrer.

The question of ordinary negligence is self-evident: it involves an act so obviously careless as to be apparent as negligence not only to the expert but to the lay jury. It may be pleaded as such and proved without the aid of expert testimony. *Caldwell v. Knight*, 92 Ga. App. 747 (89 SE2d 900). No such negligence is alleged here.

The petition attempts to charge only that the defendant, by failing to inspect functions performed by hospital personnel, failed to anticipate and guard against the negligence of the latter, but it fails to allege that a surgeon under the facts described would have any duty to make such inspection or to show that any facts exist sufficient to raise such a duty.

Granted that inspection of the incubator might have saved the infant plaintiff from harm resulting from the negligence of another, the failure to inspect, like any other act resulting in injury, is not negligence unless it also involves the breach of a duty which the actor owes to the plaintiff. *Central of Ga. R. Co. v. Griffin*, 35 Ga. App. 161 (132 SE 255); *Southern R. Co. v. Liley*, 75 Ga. App. 489 (43 SE2d 576). "Knowledge of the facts out of which the duty arises is an essential element for consideration in determining whether one . . . has been guilty of negligence." *Norris v. Macon Terminal Co.*, 58 Ga. App. 313 (198 SE 272). This petition as amended shows no duty on the part of the defendant surgeon in the exercise of reasonable professional skill to supervise, check, and inspect the concealed dangerous position of the infant in the incubator. It fails to show knowledge by him of any facts from which such duty would arise. It fails to allege

even that the defendant knew of the pre-heating bulb not controlled by the thermal switch on the outside of the incubator, but on the contrary affirmatively states that the hospital negligently covered it from view "so as to prevent Dr. Patterson from readily observing the conditions." The clear inference is that the defendant had no original duty to place the infant in the incubator, had no knowledge that the hospital had been negligent, and was apprised of no facts knowledge of which would impose a duty on him to anticipate and therefore guard against such negligence. I accordingly concur in the judgment of affirmance.