A91A0628. DENT et al. v. MEMORIAL HOSPITAL OF ADEL, INC.
(408 SE2d 473)

BEASLEY, Judge.

The parents of Mark Alan Dent, and the father as administrator of his estate, instituted this medical malpractice action against Memorial Hospital of Adel and others for the wrongful death of their 15-month-old son. They appeal from the trial court's grant of summary judgment to the hospital.

On motion for summary judgment under OCGA § 9-11-56, the evidence is viewed in favor of the non-moving plaintiffs. *Drake v. Leader Nat. Ins. Co.,* 153 Ga. App. 314, 316 (1) (265 SE2d 114)

(1980), and cits. At approximately 10:30 p.m. on November 21, 1987, Mark Alan Dent stopped breathing. When his mother picked the child up, his head fell back and his mouth opened. The parents revived the child through CPR and took him to the hospital's emergency room.

Dr. Howard McMahan was on duty. After examining the child and speaking with the parents, he concluded that the child had suffered an apneic event, which is a transient cessation of respiration, and had an upper respiratory tract infection. He was also concerned that a sibling had died 12 days earlier from Sudden Infant Death Syndrome. At this time the child was breathing spontaneously and his vital signs were stable.

Dr. McMahan decided that the child should be admitted to the hospital, and he left him in the care of the nursing supervisor, Shirley Hardy. He gave instructions that the child's vital signs be taken hourly, that he be placed on a pediatric apnea monitor, and that a cool mist vaporizer be put in his room. Dr. McMahan's purpose in ordering the monitor was so that the staff would be notified in a timely fashion in the event the child stopped breathing, so that resuscitative efforts and intervention could be instituted quickly.

Nurse Hardy testified by deposition that beginning at about 12:30 a.m., she made at least six attempts to activate the apnea monitor, to monitor the child's ECG recording and heart rate and his respiratory rate or number of breaths per minute. She did not activate the temperature and blood pressure parts of the multi-purpose monitor. The monitor, which visually displays the rates, emits a loud audible alarm when a breath is not taken within a certain period of time or if an electrode becomes detached so that monitoring stops.

The problem was that the alarm sounded each time she attached the electrodes on the lead wires to the child's chest, even though the child was breathing. She consulted another nurse, who was unable to help, as well as the instruction manual for the monitor. Eventually she determined that the electrodes she was using were too small, in that the size of the electrodes was based on the age of the child, and this child was large for his age. When the larger electrodes were used, the monitor displayed his breathing and the alarm did not sound. She testified that she set the alarm for ten seconds, so that if the child did not take a breath for ten seconds, the alarm would sound.

After the monitor was set up, nurse Hardy and nurse's aide Virginia Ratts began assessing the child on a rotating basis each half hour. The light was turned off in the room, and the mother and child fell asleep. The mother awoke to notice that a nurse checked the room about 4:00 a.m. and then she fell asleep again. She awakened at approximately 4:20 a.m., did not hear the monitor's beeping sound, saw straight lines on the heart and respirator displays, and discovered

that the child was not breathing. The leads to the monitor were attached, and he looked dark around his ears and mouth. She ran to the nurses' station for help.

Nurses' aide Ratts ran to the room and instructed Mrs. Dent to fetch Shirley Hardy. Nurse Hardy testified that she ran to the room, summoned by the alarm, and saw Mrs. Dent on the way. She found the child had cyanosis (blue coloring) around his mouth and was not breathing, although a heartbeat registered on the monitor. The mother testified that the alarm did not sound and that when she returned to the room, she noticed that both alarm switches were in the "off" position. She said to nurse Hardy, "Y'all forgot to turn the alarm back on," and the nurse looked at her "like [she] didn't know what [she] was talking about and told [her] to get out of the way so she could work." Mrs. Dent repeated this statement to others, including Dr. McMahan, who made no response. Nurse Hardy testified that she turned off the alarm when she entered the room. Thus there is a conflict in the evidence as to whether the alarm switch was on or off at the time the child stopped breathing.

When nurse Hardy arrived in the room, she instructed another nurse to bring in an "Ambu bag" in order to resuscitate the child. Next she called for the "crash cart" and told someone to summon Dr. McMahan. When he arrived a few minutes later, the nurses were attempting to resuscitate the child.

Dr. McMahan testified that there were several problems with items on the crash cart. The laryngoscope blade was too large, as were the pads, and there was no pediatric bicarbonate solution on the cart. The nurses were using too large a mask, although there was a pediatric mask available. An infant-size blade and bicarbonate solution were obtained from nearby and the pads available from the cart were torn in half. The smaller mask was substituted and the child was intubated.

The child's heartbeat resumed but his breathing did not and Dr. McMahan transferred him to another hospital in an ambulance with respiratory intubation. There he died four days later without ever resuming breathing on his own for any sustained period.

In support of its motion for summary judgment, the hospital submitted an expert affidavit executed by Dr. McMahan. He stated that he personally participated in the care and treatment of the child; that he is familiar with the applicable standards of care for hospitals and for nurses; and that it is his opinion "that the care rendered to Mark Alan Dent by nursing personnel and other employees at the [hospital] met or exceeded that degree of care and skill exercised by similar professionals generally under similar conditions and like surrounding circumstances. Likewise, the equipment, facilities, and other personnel of the hospital met the standard of care for the community." He also

stated that it is his "professional opinion that no act or omission by any nursing personnel or other employee of the [hospital] either caused or contributed in any way to any injury allegedly suffered by Mark Alan Dent . . . or . . . to the death of Mark Alan Dent." (Yet in his deposition nearly two years earlier he testified that he was never, to his satisfaction, clear on whether the alarm sounded or not. "There were conflicting reports," he said.)

Pursuant to OCGA § 9-11-56 (e) and *Howard v. Walker*, 242 Ga. 406 (249 SE2d 45) (1978), this expert opinion must be countered with a contrary expert opinion in order for plaintiffs to avoid summary judgment. See also *Beauchamp v. Wallace*, 180 Ga. App. 554 (349 SE2d 791) (1986), citing *Payne v. Golden*, 245 Ga. 784 (267 SE2d 211) (1980).

Countering Dr. McMahan's opinion are the two affidavits executed by Dr. Scott R. Crowgey, one filed with the complaint and the other filed in response to the motion. He averred that he is a medical doctor who has served as a pediatric resident at Grady Hospital and Emory University Hospital and serves as visiting faculty on the medical staff in the pediatric department of those two hospitals as well as research engineer in biomedical research at George Institute of Technology. He has degrees and work experience in biomedical engineering, medicine, and electrical engineering.

Dr. Crowgey stated that he based his opinion on the certified medical records, among other things. It was his opinion that the hospital was negligent and that the care rendered by the nursing personnel "did not meet the degree or standard of care exercised by similar professionals generally under similar conditions and like surrounding circumstances. In addition, the equipment, facilities and other personnel of the [hospital] did not meet the required standard of care for similar hospitals in similar communities." He spelled out the particular deviations from the required standard of care as follows:

"The [hospital personnel] required an unnecessarily long period of time to initiate proper operation of the monitor, clearly indicating that [they] were improperly and/or poorly trained in the operation and use of pediatric monitors;

"The monitor alarm failed to sound when plaintiffs' decedent experienced an apneic event, clearly indicating that the . . . personnel negligently operated the monitor during the course of treatment of Mark Alan Dent;

"The . . . personnel failed to properly supervise the operation and use of the monitor in their treatment of plaintiffs' decedent leading to the failure of the monitor to sound when [he] experienced an apneic event;

"The hospital's 'crash cart' which was used in an attempt to resuscitate plaintiffs' decedent was inadequately and improperly

equipped, thereby delaying resuscitation of plaintiffs' decedent, increasing the period of time he was without oxygen, and causing his severe and permanent damage which led to his subsequent death."

In the first affidavit he stated that the factual scenario regarding the monitor "gives a clear indication that the [hospital] . . . failed to exercise that degree of ordinary care required of a health care facility in the same or similar location as that of defendant in the supervision, operation, use and control of the pediatric monitor."

The trial court concluded that plaintiffs' evidence by way of Dr. Crowgey's affidavits failed to meet the requirements for controverting defendant's expert opinion so as to create an issue of fact, as set out in *Humphrey v. Alvarado*, 185 Ga. App. 486, 487 (2) (364 SE2d 618) (1988). What Dr. Crowgey failed to do, the trial court concluded, was "to set out the parameters of the appropriate standard of care, and . . . to explain set particulars of how [the hospital's] conduct deviated from this standard." The court regarded Dr. Crowgey's statements as insufficient conclusory statements of negligence.

There is evidence that the staff had great difficulty in successfully activating the monitor, and there is some evidence that the alarm switch was not turned on so that there was a delay in resuscitation efforts. There is some evidence that this delay was lengthened by the lack of proper accessories on the crash cart for this particular child despite the knowledge of the hospital personnel that the crash cart might be needed for this child whose respiration was problematic.

*Humphrey* cites earlier cases for the test with respect to the plaintiffs' counter expert affidavit, which includes that the countering expert " 'must state the particulars in which the defendant's treatment of the plaintiff was negligent. . . . [T]he plaintiff[s] cannot prevail on motion for summary judgment by merely presenting a conclusory opinion that defendant was negligent or failed to adhere to the professional standard. [They] must *state the particulars*. [They] must establish the parameters of the acceptable professional conduct and set forth how or in what way the defendant deviated therefrom.' "

The law does not require the use of "magic words" to constitute a case-saving expert opinion. "Magic words alone, no matter how often repeated, do not make a fact. Rather the facts in the record must be sufficient to meet the legal standard embodied in the magic words." *Jackson v. Gershon*, 251 Ga. 577, 579 (308 SE2d 164) (1983). " 'The failure of a medical expert to use "magic words" in accusing a colleague of negligence in a medical malpractice case will not deprive his opinion of all efficacy where it is clear that the witness is of the opinion that the colleague failed to exercise due care in treating the patient.' " *Hively v. Davis*, 181 Ga. App. 733, 734 (353 SE2d 622) (1987).

"[M]athematical certainty is not required in affidavits offered to demonstrate medical negligence." *Hall v. Okehi*, 194 Ga. App. 721, 723 (2) (391 SE2d 787) (1990). What is to be considered is "whether the medical affiant set forth standards and pointed out ways in which the defendant . . . failed to meet them." Ibid.

From a reading of Dr. Crowgey's affidavits, it is clear that his opinion was that the standard is that when a hospital has a pediatric respiratory monitor, its staff must know how to use it, and must use it, to achieve its purpose of early detection of a problem so that speedy intervention can be effected and the child restored to oxygen and breathing before harm sets in. It is also clear that his opinion was that the standard is to have a crash cart equipped and ready to treat the particular child being monitored in the event that breathing stops. Finally, it is clear that in his opinion the hospital failed in these regards, that the monitor was not properly activated because the alarm was off and the cart was missing necessary accessories, and that the resulting delays increased the period of time that the child was without oxygen, which caused the damage leading to his death. Proximate cause is also a medical question in such cases. See *Eberhart v. Morris Brown College*, 181 Ga. App. 516 (1) (352 SE2d 832) (1987), and cits.

It cannot be said that this "merely . . . [presents] a conclusory opinion that the defendant was negligent or failed to adhere to professional standards of conduct without stating the parameters of such conduct and the particulars of the defendant's deviation therefrom. . . ." *0-1 Doctors Memorial Holding Co. v. Moore*, 190 Ga. App. 286, 287 (1) (378 SE2d 708) (1989). Instead, read in their entirety, the affidavits set out what should have been done and compared that to what was done. *Loving v. Nash*, 182 Ga. App. 253, 256 (1) (355 SE2d 448) (1987). This proof, too, must be viewed in favor of the party opposing the motion. *Hall*, supra at 724.

As in *Jackson*, supra at 580, there was thus expert testimony "which was not inconsistent with plaintiff's contention that defendant failed to exercise the requisite professional care, skill and diligence. 'Summary judgments should only be granted where, construing *all* inferences against the movant, it yet appears without dispute that the case can have but a single outcome.' " That not being the case here, summary judgment was not authorized.

*Judgment reversed. Banke, P. J., and Carley, J., concur.*

DECIDED JUNE 28, 1991 —
RECONSIDERATION DENIED JULY 16, 1991 — ■

*Dennis & Corry, Robert E. Corry, Jr., Robert G. Ballard, William E. Gray II*, for appellants.

*Sullivan, Hall, Booth & Smith, John E. Hall, Jr., Roger S. Sumrall*, for appellee.