A97A0289. DENT et al. v. MEMORIAL HOSPITAL OF ADEL, INC.
(490 SE2d 509)

BEASLEY, Judge.
The Dents as parents, and the father as the estate administrator, sued Memorial Hospital of Adel, Inc. ("hospital") and others for the wrongful death of their 15-month-old son.

At about 10:30 p.m. on November 21, 1987, Mark Alan Dent stopped breathing. His parents successfully administered CPR at home and rushed Mark to the hospital's emergency room. Dr. Howard McMahan concluded that Mark had suffered an apneic event, decided that Mark should be admitted to the hospital for observation and ordered his placement on a pediatric apnea monitor. The monitor was to be set so an alarm would sound, alerting the nurses, if Mark stopped breathing for ten seconds.

At about 4:30 a.m., Mark's mother awakened and discovered her son was not breathing. After noticing he appeared extremely blue,

she ran to the nurse's station for assistance. When the nursing staff responded, Mark was already in a cyanotic state, indicative of oxygen deprivation for several minutes, not a few seconds. Mark never resumed normal, unassisted breathing and died four days later.[1]

The evidence conflicted as to whether the alarm failed to sound, whether the attending nurse failed to turn the alarm switch to the "on" position, and whether the hospital's crash cart lacked several essential items. There was opinion evidence that the nursing staff's response to Mark's emergency was inadequate. After a lengthy trial, the jury found for the hospital. Following denial of their motion for new trial, the Dents appealed and enumerate two errors.

1. The Dents contend the trial court committed reversible error by using a charge on professional negligence which confused and misled the jury into believing it could disregard the issue of ordinary negligence. The complaint and the pre-trial order, which formed the basis for the claim and the issues, the closing arguments of both counsel, the judge's whole charge to the jury, and the history of the jury's deliberations and question and the judge's reply, show that no reversible error occurred as enumerated.

It is evident that the jury understood that it should consider two theories of negligence, ordinary and professional. Whether the jury found no breach of the duty of ordinary care by the nurses and no breach of their professional duty of care or lack of proximate cause, which of course we do not know, the charge as given did not mislead or confuse. Even if the charge could have been made clearer or reworded, that is not the issue.

The jury had the complaint with them for their deliberations. It contained alternate theories in separate counts. As related to the hospital, the plaintiffs alleged undifferentiated negligence in paragraphs 13, 26 and 28.

Plaintiffs outlined their contentions about the events in the pre-trial order. They listed two theories of liability, i.e., "ordinary negligence" and "medical (nursing) malpractice or professional negligence including the breach of a duty. . . ." The "specifications of negligence" were not separated into two categories, one ordinary and one professional, and are not listed in the record. Defendant's contentions were outlined as not breaching any duty of care owed and allegedly violated.

The verdict form agreed upon by the parties does not distinguish between the two theories. It simply lists as possible verdicts one in favor of the plaintiffs as parents for the wrongful death (value of life),

---

[1] Summary judgment was reversed in *Dent v. Mem. Hosp. of Adel*, 200 Ga. App. 499 (408 SE2d 473) (1991), which recites in detail a factual account of the action.

one in favor of the father as administrator of the child's estate (pain and suffering, medical and burial expenses), and one in favor of the hospital. It was in fact the form used, except it omitted pain and suffering as an item of damages for the administrator.

While we recognize that the jury is not instructed on the law by the lawyers but by the judge, the arguments of counsel illuminate the issue as to whether the jury was misled or confused by the judge's instructions. The arguments of counsel made clear that the two theories were advanced by plaintiffs, thereby contributing to the jury's understanding. Defendant, who gave the first closing argument, told the jury at the outset that "[n]umber one, you have to decide if there was a breach of a duty. In other words, did either the applicable standard of care that was applicable to nurses, whether that was breached, or whether ordinary — what a reasonable person under those same or similar circumstances, that was breached. So, the first inquiry you have to make is on any allegation that they make, that they contend entitles them to recover, you have to make that initial threshold determination. Was there a breach of duty and was that duty either ordinary negligence or was it standard of care." Defendant discussed in particular medical malpractice, as related to the nurses' training and to the care given, and, in so doing, focused on the expert testimony.

Plaintiffs also discussed the two theories of ordinary negligence and professional negligence and said that the jury would not have to find professional negligence but only ordinary negligence by way of the fact that the alarm was, or alarms were, not on. Plaintiffs argued that experts are necessary to prove professional negligence. Their counsel guided the jury's thinking: "If you get beyond ordinary negligence, then you do have to go to the issue of professional negligence. And in that regard, that is where you consider the standard of care exercised by nurses, nurses' aides under like or similar circumstances."

And later: "I mean, it doesn't take a rocket scientist here, ladies and gentlemen. We are talking about ordinary negligence. . . ." Still later: "It (the hospital) was a place where they were charged with exercising professional judgment and doing things to take care of him. And not only did they not exercise professional judgment, as you've heard from the experts, they didn't exercise ordinary care in the instance of either turning on the alarm, turning on alarm number two, or just setting it." (Counsel then tied the alarm apparatus into professional negligence.)

At the end of the argument about liability, before going on to the issue of damages, counsel said: "If you find that the hospital is liable, . . . and by liability now, I mean that they committed an act of negligence [or] professional negligence, and that that negligence [or] pro-

fessional negligence, proximately caused the death."

Thereafter, the court charged the jury. It first charged, in a clear fashion, ordinary negligence: "Ordinary negligence means the absence of or the failure to use that degree of care which is used by ordinarily careful persons under the same or similar circumstances. I charge you that in order that a party may be liable in negligence, it is not necessary that it should have contemplated or been able to participate — excuse me, strike that, have been able to anticipate the particular consequences which ensued or the precise injuries sustained by the plaintiff. It is sufficient, if, by the exercise of reasonable care, the defendant might have foreseen that some injury would result from its acts or omission, or that consequences of a generally injurious nature might have been expected."

Later, and separate from the charge on ordinary negligence, the court charged at some length on the theory of professional negligence. In the midst of the charge on professional negligence, and having already covered the subject of ordinary negligence in an earlier part of the charge, the court charged what appellants now contest: "if you find from the evidence in this case that the defendants did not commit any acts of professional negligence or malpractice, a verdict in the plaintiffs' favor would be unlawful. . . ." It is obvious that the court was speaking about a verdict based on the theory of professional negligence. That is what the court was focusing on. It had just said that the plaintiffs did not have to prove "all the grounds of negligence" to win, making the point that any of the numerous acts of negligence that were charged would be a sufficient basis for recovery (assuming proximate cause). Its exact instruction was: "I charge you it is not necessary in order to give the plaintiffs the right to recover, that all the grounds of negligence alleged by the plaintiffs be proved. It would be sufficient for that purpose if any one or more of the grounds of negligence set out in the complaint or alleged by the plaintiff be sustained by the evidence." Appellants concede that the court charged that it was not necessary that all grounds of negligence be proven for plaintiffs to recover.

It is clear that in the instructions regarding damages the court embraced both ordinary negligence and professional negligence. It spoke of "tortious act" and "a tort, here negligence" without excluding ordinary negligence. The same is true when it focused on the hospital corporation, which the judge instructed would be liable "for the negligence of its agents and/or employees, if any you should find, if at the time of the negligent acts, the employees were acting within the scope and authority of their employment." This was, again, not narrowed to "professional negligence" nor in any way excluded ordinary negligence. If anything, it favored *ordinary* negligence because the qualifier "professional" was not used. Neither was the term "malprac-

tice" used.

During the charge conference plaintiffs objected to a portion of defendant's request number 20, but it was out of context then and the court agreed not to give that part of the charge. Defendant was more interested in the part saying the hospital did not have to prove what did cause the injury anyway, and plaintiffs had no objection to it. Although the court agreed not to give the beginning of that requested charge, it did so. But in the context of the entire charge on professional negligence, and in the broader context of the entire charge as given, which included a clear charge on ordinary negligence, and in the additional circumstances already related, it does not stand to reason that the jury was confused or misled.

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error. [Cits.]" *Williams v. State*, 249 Ga. 822, 825 (3) (295 SE2d 293) (1982). Challenged segments cannot be considered in isolation to ascertain whether the charge is accurate and fair and worked no prejudice to the complaining party. *Riceman v. State*, 166 Ga. App. 825, 827 (2) (305 SE2d 595) (1983). Even a misstatement of the law does not constitute reversible error if the charge " 'conveys correctly the intent of the law and is so framed as to be applied with understanding to the fact situation.' " *Ga. Kraft Co. v. Laborers' Intl. Union &c.,* 170 Ga. App. 581, 584 (3) (317 SE2d 602) (1984).

In addition, never did the jury complain of the charge. It started deliberating but apparently was too tired and wanted to think about it, so the jurors were sent home about 5:20 p.m. When deliberations resumed at 9:00 the next morning, the jurors took a vote first thing and it was 9 to 3. Right after lunch it was 10 to 2, the foreman explaining that this change occurred after one part in the case was clarified. During the morning deliberations the jury asked (as paraphrased by the judge when reporting this to counsel afterwards) whether "if they found a verdict for the plaintiffs, could the hospital do anything to any of the nurses in terms of reprimanding or firing or — that type of thing." The judge instructed that the verdict would not affect what action the hospital took, if any.

After lunch from noon to 1:00, the jury continued deliberating until the court intervened at 2:25 p.m. to inquire as to progress and to give Georgia's version of the *Allen* charge. The jury then reached a unanimous verdict for defendant hospital in half an hour. The jury simply did not find liability on the part of the hospital, whether from lack of proof of proximate cause or lack of preponderating proof of negligence. In appellants' argument section of their brief on appeal, no identification is made of those acts which they claim could constitute ordinary negligence. The only clue is in the "Statement of Facts" section, where at page 4 appellants assert that the act of *ordinary*

negligence which could have formed a basis for liability was the failure of the nurses to turn the alarm switch to the "on" position. Thus they apparently concede that all of the other alleged acts required medical expert testimony to enlighten the jury as to whether the *professional* standard of care was met or breached.

As to the issue of fact on whether the alarm was turned to the "on" position, there was a great deal of conflicting evidence about it, and the jury could not have missed it. It does not stand to reason that, had the jury found as fact that the alarm was *not* put into the "on" position, it would have found for defendant because it understood that it would have to consider this an act of professional negligence in order to return a verdict for plaintiffs. That is what we must conclude when we decide that the charge constituted reversible error because it misled and confused the jury.

This cannot be the case, for the reason that even in the professional negligence charge, the court instructed that there can be medical negligence without expert testimony if "the alleged negligence, . . . although connected with medicine, were of such a nature that it would be a matter of common knowledge and observation that such injury would not have occurred if the medical service had been performed with ordinary skill and care." So plaintiffs were not deprived of a verdict based on the alleged failure to turn the alarm to the "on" position even if the jury had only considered medical negligence as a theory of recovery. Thus, assuming arguendo that the complained-of wording in the charge was error, the record does not show it was reversible error; harm, as well as error, is required. " '[A]n error in charge without a showing of prejudice does not constitute reversible error. (Cit.)' " *Monroe v. Southern R. Co.*, 210 Ga. App. 597, 598-599 (2) (436 SE2d 568) (1993).

This is not a case where the questionable jury charge is shown to have "actually induced" an award prohibited by law, as found in *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988). Nor does this case involve a jury charge that improperly allowed an award based on an irrelevant legal theory, as in *Jones v. Davis*, 183 Ga. App. 401, 402 (1) (359 SE2d 187) (1987).

2. The remaining issue is whether the trial court erred in refusing to exclude evidence relating to the "locality rule" in that it was not relevant to the issues in the action.

The Dents moved in limine to exclude evidence as to the adequacy of the hospital's facility and equipment. During the hearing on this motion, the Dents stipulated that recovery was sought on the hospital's failure to exercise ordinary or professional care and not on a failure to provide equipment or facilities. The trial court deferred ruling on that motion and the Dents made a continuing objection and objected during the trial.

The "locality rule" requires that hospitals exercise the duty of ordinary care of furnishing equipment and facilities reasonably suited to the uses intended and in general use by hospitals in the area. *Hodges v. Effingham County Hosp. Auth.*, 182 Ga. App. 173 (1) (355 SE2d 104) (1987). Where, as here, plaintiffs are not questioning the adequacy of a hospital's services, equipment, or facilities, evidence of local standards and the "locality rule" do not apply. *Gusky v. Candler Gen. Hosp.*, 192 Ga. App. 521, 522 (1) (385 SE2d 698) (1989).

No reversible error appears with respect to the "locality rule." No mention was ever made to the jury of that legal principle or its meaning or effect. To say that evidence as to size itself involves the locality rule confuses the mere relevancy of such evidence to that rule with the applicability of the rule in a given case. The latter was not involved, but that did not render the evidence inadmissible for other purposes. Since the locality rule was not introduced, the jury could not have mistaken the standard of care by which the defendants' acts or omission were to be measured.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Ruffin, J., concur. McMurray, P. J., Eldridge, J., and Senior Appellate Judge Harold R. Banke dissent.*

ELDRIDGE, Judge, dissenting.

I fully agree and concur with the entire dissent of Senior Appellate Judge Harold R. Banke but feel it necessary to address an issue raised by the majority that the appellants failed to adequately set forth their objection to the charge by the trial court to preserve such issue. While I believe, along with the dissent of Senior Judge Banke, that a proper objection by appellants was timely made in the trial court, the case sub judice comes within the rare exception of OCGA § 5-5-24 (c), "Notwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." Clearly, when the trial court charges upon only one theory of liability as the exclusive means to recover when the evidence tendered, argued, and submitted charges raise two theories of liability and when objection is timely made but the trial court refuses to correct the charge given after the error has been objected to on the record, such circumstances clearly and palpably fall within the exception of OCGA § 5-5-24 (c). This Court recently in *Drug Emporium v. Peaks*, 227 Ga. App. 121 (488 SE2d 500) (1997), held that failure to charge on the standard of proof for punitive damages, even without written request to charge submitted or specific objection made, constituted reversible error as "plain error" under OCGA § 5-5-24 (c); the case sub judice is factually more compelling. The case

sub judice is even more egregious and within OCGA § 5-5-24 (c) than *Drug Emporium*, Presiding Judge Birdsong in a well reasoned and compelling opinion held, "However, pretermitting whether appellant adequately preserved this question on appeal by taking a timely, adequate exception to the trial court's charge [that professional malpractice was the exclusive basis for liability] rather than [the two theories of liability, ordinary negligence and professional malpractice,] and by sufficiently arguing this particular issue in its appellate brief, is the issue whether this was an error of such nature and magnitude as to constitute a plain error of which an appellate court can take notice sua sponte. *It clearly is such.* It is a general appellate rule that in 'exceptional circumstances . . . appellate courts may, on their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.' *Kearney v. State*, 184 Ga. App. 64, 66 (360 SE2d 633) [(1987)]. Recently our Supreme Court, after holding that both errors not raised and errors not timely raised generally are waived, stated: 'In the future, however, except in cases of "plain error," enumerations of error not timely raised and/or argued shall be waived. . . .' *Lynd v. State*, 262 Ga. 58, 60-61 (8) (414 SE2d 5) [(1992)]. ' "Plain error" is that which is "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice" or which "seriously affects the fairness, integrity or public reputation of a judicial proceeding." ' . . . Id. at 61, n. 2. Inherent in this holding is that 'plain error' is not so waived." (Emphasis supplied.) *Drug Emporium,* supra at 125. See also *Agnew v. State*, 267 Ga. 589, 591 (2) (481 SE2d 516) (1997); *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988).

"When an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record[, *which as to this error it does not,*] that the error is harmless." (Punctuation omitted.) *Foskey v. Foskey*, supra at 737. "We are unable to say that the erroneous charge, as vague as it was, could not have misled the jury." *Dept. of Transp. v. Davison Investment Co.*, 267 Ga. 568, 570 (481 SE2d 522) (1997). The trial court's error in charging the jury that precluded a consideration of ordinary negligence and restricted the jury to a consideration of hospital malpractice and failing to correct such charge when brought to the court's attention, even if imperfectly done, is such "plain error" and "substantial error" that reversal is mandated. See *Drug Emporium,* supra. When the plaintiffs received an adverse verdict on a close evidentiary case, it cannot be said that there was no harm in the charge that eliminated their best theory of recovery and the minds of the jury were not prejudiced thereby in their deliberations.

Judge Harold R. Banke, dissenting.

The majority goes to unnecessary and extraordinary lengths to deny the obvious: the trial court erred in its instruction to the jury and this error was presumptively harmful. See *Clements v. Clements*, 247 Ga. 787, 789 (2) (279 SE2d 698) (1981). The proper approach is to acknowledge the error, admit that it was presumptively harmful, then decide whether in light of the entire record, the error was rendered harmless. *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547) (1988); *Jones v. Davis*, 183 Ga. App. 401, 402 (1) (359 SE2d 187) (1987).

Here, the Dents alleged acts of professional negligence (e.g., failure to administer to Mark's needs such as charting his condition at appropriate intervals) as well as acts of ordinary negligence (e.g., the failure to operate the monitor properly). The Dents offered some evidence in support of both types of negligence.

During the charge conference, the trial court agreed that the charge at issue failed to allow for the Dents' recovery for ordinary negligence. Despite the fact that the trial court agreed not to give the disputed charge, which the Hospital had withdrawn, it gave the charge anyway. The jury was instructed: "I charge you that if you find from the evidence in this case that the defendants did not commit any acts of professional negligence or malpractice, a verdict in plaintiffs' favor would be *unlawful*, even if the defendants have not accounted for the injury in question. In other words, the law does not require the defendants to prove to you what may have caused the injury in question." The Dents objected to the charge as being erroneous. Although in another charge the jury was advised that a verdict could be based on negligence, the charge at issue instructed the jury that it would be unlawful to find for the Dents unless it found professional negligence. After noting the Dents' objection, the trial court concluded, "I think they [the jurors] can take the whole charge as it is and figure it out."

Courts should not give conflicting rules of law and leave the jury to choose between them. *Johnson v. State*, 148 Ga. App. 702, 704 (2) (252 SE2d 205) (1979). " ' "[W]here an erroneous statement is made it is not cured by a correct statement in another portion of the charge unless the jury's attention is called to the correction by a retraction of the erroneous statement or in some other manner." ' " Id. In this case, the charge contained two distinct and conflicting propositions as to whether the jury could render a verdict based on ordinary negligence absent a finding of professional malpractice. See *Clements*, 247 Ga. at 789 (2). This was plainly error. Nowhere in the court's instruction was the jury expressly advised that it could find liability based on either the theory of ordinary negligence or professional negligence.

" 'A charge containing two distinct propositions conflicting the

one with the other is calculated to leave the jury in such a confused condition of mind that they cannot render an intelligible verdict, and requires the grant of a new trial.' [Cits.]" *Clements*, 247 Ga. at 789. In view of the evidence showing that the Hospital was responsible for acts of ordinary negligence, a charge which barred recovery except for professional negligence was prejudicial, fundamentally unfair, and not adjusted to the evidence. *Hollywood Baptist Church v. State Hwy. Dept.*, 114 Ga. App. 98, 100 (3) (150 SE2d 271) (1966). See *Lehman v. Zucherman*, 198 Ga. App. 202, 206 (7) (400 SE2d 704) (1990) (reversible error committed where inapplicable instruction could have misled jury). Notwithstanding the majority's contention to the contrary, inasmuch as the jury found for the Hospital, it cannot be said that the error was rendered harmless by the jury's verdict. *Foskey*, 257 Ga. at 737 (2). See *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 112 (2) (387 SE2d 144) (1989).

In its strained attempt to find harmless error, the majority purportedly relies on the charge as a whole, the complaint, the pre-trial order, closing arguments of counsel, and the history of jury deliberations. Yet the trial consumed about a week, more than 30 witnesses testified, and the transcript and record exceed 1,800 pages. My review of the record directs me to the inescapable conclusion that the Dents were deprived of a fair trial.

In light of the confusing charge, I cannot agree that the instruction as a whole eliminated the possibility of confusing and misleading a jury of ordinary capacity and understanding. *McDevitt & Street Co. v. K-C Air Conditioning Svc.*, 203 Ga. App. 640, 647 (10) (418 SE2d 87) (1992). As noted above, the jury could have dutifully believed that it could not lawfully find for the Dents unless it found the Hospital committed both ordinary negligence and also professional negligence. See *Lehman v. Zucherman*, 198 Ga. App. at 206 (7); compare *Macon-Bibb County Hosp. Auth. v. Whipple*, 182 Ga. App. 195, 196 (2) (355 SE2d 83) (1987) (applicable law must be stated accurately and fairly so as to work no prejudice).

Moreover, the court's instruction as a whole was disjointed and lengthy, containing more than 37 separate charges with the erroneous instruction buried in the midst. Even assuming arguendo that the jury had copies of the complaint and pre-trial order, I do not see how they eliminated the harm, particularly because only the trial court's instruction supplied the applicable law. Neither the complaint nor the pre-trial order instructs the jury that the Dents could recover on either theory of negligence and need not prove both theories in the conjunctive.

Nor did I find closing arguments particularly enlightening. The majority offered a truncated version of part of one closing, supposedly to illustrate how the argument clarified the two theories for the

jury. Notwithstanding the majority's edited rendition, what counsel actually argued was: "If you find that the hospital is liable you are required, there's no choice, if you find that they are liable, you are required and you find — and by liability now, I mean that they committed an act of *negligence, professional negligence* and that that *negligence, professional negligence* proximately caused the death." Where two commas appear in the transcript between negligence and professional negligence, indicating the conjunctive, the majority, without any authorization, rewrites the statement in the disjunctive, supplying two "[or]'s" where none appears. The majority's gratuitous insertion of the two "or's" into counsel's remarks illustrates the inherent lack of clarity. This need to edit attests to the indispensable obligation of the trial court to provide proper clear instruction, which the trial court failed to fulfill.

Nor does the history of jury deliberations demonstrate that the jury understood the instructions as a whole. On the first day of deliberation, the foreperson informed the court that the jury wanted to be permitted to "go home and think about it and pray about it" overnight. After the jury had deliberated for a while, the foreperson advised the court that "[w]e are at a deadlock . . . and I don't see any way this is going to be broken." In response, the trial court felt compelled to employ an *Allen* charge to avert a deadlock. The need for an *Allen* charge arguably shows the jury was experiencing difficulty and may well have been confused.

When the Dents pointed out the conflicting charge, it was incumbent upon the trial court to clarify the instruction. By leaving it to the jury to "figure it out," the court abrogated its role of providing proper legal instruction. See *Johnson*, 148 Ga. App. at 704 (2). The charge was plainly error and my review of the record persuades me that the error requires the grant of a new trial. *Foskey*, 257 Ga. at 737 (2). For these reasons, I must respectfully dissent.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 31, 1997 —

*Gray & Hedrick, William E. Gray II, Law Office of David W. M. Boone, Robert G. Ballard*, for appellants.

*Sullivan, Hall, Booth & Smith, John E. Hall, Jr., Thomas A. Graham*, for appellee.