A97A2027. DRAWDY v. DEPARTMENT OF TRANSPORTATION.
(491 SE2d 521)

ELDRIDGE, Judge.
The plaintiff, Brenda Drawdy, was injured in an automobile accident which occurred on July 25, 1993, in Glynn County. Drawdy was traveling westbound on the E. J. Torras Causeway. It was raining, and as she approached the Back River Bridge, her vehicle entered a pool of standing water, which caused her vehicle to hydroplane out of control and to strike the guard rail; Drawdy was thrown from her vehicle.

Drawdy brought suit against the Georgia Department of Transportation ("DOT") for negligence in maintaining a public road and in permitting such road to acquire an unsafe condition. Drawdy did not attach an affidavit of an expert to her complaint, as required by OCGA § 9-11-9.1 for actions alleging professional malpractice; however, Drawdy never claimed professional malpractice, only ordinary negligence. The DOT raised such failure as a defense in its answer.

On January 2, 1997, the DOT filed a motion for summary judgment, which was granted by the trial court. Even though Drawdy was still alleging only ordinary negligence in the repair and mainte-

---

nance of the roadway, the trial court found that the action against the DOT constituted an action for professional malpractice, and that the failure of Drawdy to attach an affidavit as required by OCGA § 9-11-9.1 barred the complaint. It is from the trial court's order granting summary judgment to the DOT that Drawdy appeals.

In her sole enumeration of error, Drawdy alleges that the trial court erred in granting the DOT's motion for summary judgment. Drawdy argues that her claim is one for ordinary negligence in the repair and maintenance of the roadway and not for the negligent design of the roadway and, therefore, an affidavit of an expert pursuant to OCGA § 9-11-9.1 is not required.

A defendant, on a motion for summary judgment, cannot convert an action for ordinary negligence into an action for professional malpractice that would be controlled by OCGA § 9-11-9.1 by the presentation of an affidavit of an expert stating that the plaintiff's claims were caused by professional malpractice. If such a procedure was allowed, a jury issue would always remain as to whether the cause of the accident was one of professional malpractice or ordinary negligence, as the weight and credibility of the expert's testimony would be for jury determination. The trial court must decide as a matter of law if the negligence alleged by a plaintiff is, in fact, ordinary negligence or professional malpractice. See OCGA § 9-11-9.1; 9-11-12 (b) (6).

The DOT is not a professional, and "therefore, the affidavit requirement of OCGA § 9-11-9.1 does not *automatically* apply to any claim asserted against it. Rather, in cases such as this, the relevant inquiry is whether a particular claim is grounded upon professional malpractice, that is, an act or omission [which is a negligent deviation from a professional standard of care, established by professional and expert testimony and not known by the ordinary layperson] which constitutes malpractice. The affidavit requirement applies in cases involving claims against a . . . governmental entity when liability is based upon the averment of acts or omissions requiring the exercise of professional skill and judgment by agents or employees who themselves are recognized as professionals under OCGA §§ 14-7-2 (2); 14-10-2 (2) and 43-1-24." (Citations and punctuation omitted; emphasis in original.) *Adams v. Coweta County*, 208 Ga. App. 334, 335 (2) (430 SE2d 599) (1993); see also *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62 (424 SE2d 632) (1992); *Razete v. Preferred Research*, 197 Ga. App. 69 (397 SE2d 489) (1990); see generally *S K Hand Tool Corp. v. Lowman*, 223 Ga. App. 712 (479 SE2d 103) (1996) (as to the requirement for an affidavit in a product liability case). Therefore, since Drawdy is alleging claims only for ordinary negligence in repair and maintenance of the roadway, an affidavit of an expert pursuant to OCGA § 9-11-9.1 is not necessary.

However, on appeal, the grant of summary judgment must be affirmed if it is right for any reason. *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 543 (478 SE2d 382) (1996); *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (446 SE2d 741) (1994). Therefore, this Court must determine if the trial court was correct in granting summary judgment to the DOT on Drawdy's claims of ordinary negligence.

Turning to the facts of this case, the record shows that there had been five automobile accidents from hydroplaning on the causeway in 1987 in the vicinity of Back River Bridge within approximately one and one-half miles of each other. Only one of the accidents occurred on the same side of the bridge as Drawdy's accident; the remaining four accidents occurred on the opposite end of the bridge. In support of its motion for summary judgment, the DOT submitted the affidavit of Craig C. Brack, who is a district engineer for the DOT. Brack stated that in 1988, the DOT, pursuant to a professional design change, redesigned a portion of the roadway which included the area where Drawdy's accident occurred, and that such redesign changed the superelevation of the eastbound lane of the roadway and resulted in raising the elevation by approximately one foot from that of its original construction in 1986, which caused water to drain more rapidly from the roadway, specifically eliminating the pooling of water. Thus, in 1988, when Drawdy's accident occurred, the roadway was substantially different than it was when it was originally designed in 1986. After the DOT completed the redesign of the roadway in 1988, there were no reported accidents in the vicinity of Back River Bridge caused by hydroplaning of a vehicle until Drawdy's accident in 1993. It may be inferred that the excess water came to be on the roadway, not from a negligent design, but instead from a greater rainfall than normal.

Brack went on to state that in 1994, following notification of the DOT of Drawdy's accident, the DOT performed a topographical survey by a registered land surveyor for the purpose of determining if the superelevation of the subject roadway matched the 1988 redesign. After reviewing the topographic survey, Brack testified that, in his professional opinion, the superelevation of the roadway that existed in 1994 was substantially the same as it was when it was redesigned and constructed in 1988. Thus, the DOT pierced an essential element of Drawdy's complaint by showing that the superelevation of the roadway had not changed since it was redesigned in 1988, i.e., the roadway had no settling, holes, cracks, grooves or ruts in the surface, caused by the failure of DOT to properly repair or maintain the roadway. Therefore, the burden of *production* of evidence shifted to Drawdy to produce any evidence to controvert the testimony of DOT's expert and thereby create a jury question as to DOT's negli-

gence. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Drawdy's expert, Buck Beaver, is an accident investigator. He is not a road designer, professional engineer, or road contractor. In his affidavit, Beaver opined that Drawdy's accident was caused by hydroplaning in "standing water." He further opined that this was caused by a "defect in the construction of the road which allowed sufficient water to accumulate so that vehicles were caused to hydroplane and go out of control when travelling at a speed greater than 25 mph." However, Beaver did not state any facts on which he based his opinion, and therefore, the opinions stated in his affidavit were mere speculation. See *Johnson v. Srivastava*, 199 Ga. App. 696 (405 SE2d 725) (1991).

Further, at his deposition, Beaver testified that he had never mapped the subject roadway; that he had never measured rain accumulation on the roadway; and that other than "eyeballing" the road in clear weather, he had not examined the roadway in any fashion to determine what defect, if any, existed which allowed standing water to accumulate. Beaver admitted that the accident report indicated there were no visible road defects. He simply testified that he *thought* there must be a low spot on the roadway which had allowed the rain water to pool. Beaver stated that he did not know if the problem was caused by the superelevation or from cupping or rutting of the roadway. He only stated that from his experience, roadways generally tend to settle or deteriorate over time due to traffic. Beaver further testified that he did not know if the condition of the roadway which existed prior to the 1988 redesign continued to exist at the time of the plaintiff's accident. In fact, Beaver testified that, in his opinion, the question as to what the construction defect was and how it occurred would best be answered by a road designer. In short, Beaver's testimony failed to show the existence of any facts which would establish a lack of maintenance or repair as the proximate cause of the accident.

Even though Beaver had looked at the highway in clear weather, he was unable to point to any defect in the roadway or to lack of repair and maintenance which caused water to pool. All of Beaver's opinions are pure speculation, even when construing his affidavit and deposition testimony together. An expert cannot render an opinion of evidentiary value without personal knowledge of the facts or evidence of facts in the record to support a hypothetical question; otherwise, his opinion is pure speculation. *Taylor v. State*, 83 Ga. 647 (10 SE 442) (1889); *Loper v. Drury*, 211 Ga. App. 478 (440 SE2d 32) (1993); *DuBois v. Ray*, 177 Ga. App. 349 (339 SE2d 605) (1985); *Altamaha Convalescent Center v. Godwin*, 137 Ga. App. 394 (224 SE2d 76) (1976); *Zurich Ins. Co. v. Zerfass*, 106 Ga. App. 714 (128

SE2d 75) (1962).

Had Beaver indicated from his personal inspection that, inter alia, there was a clogged storm drain; that from wear, time, and super heating of the sun, the asphalt petroleum distillate had leaked to the surface of the roadway, changing the coefficient of surface friction; that the roadway had begun to show rutting or cupping; or that such other deterioration defect existed which would allow water to pool, then there would have been sufficient factual evidence to create a material issue of fact as to whether the DOT had failed to properly maintain and repair the subject roadway. Drawdy's reliance on the November 23, 1987 inter-department correspondence of the DOT is misplaced. This memorandum defines the superelevation defect in the subject roadway *prior* to its 1988 redesign.

As Drawdy failed to produce any evidence of lack of repair and maintenance of the roadway, no material issues of fact exist as to this element. Therefore, it was proper for the trial court to grant summary judgment to the DOT.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur in judgment only.*

DECIDED SEPTEMBER 2, 1997.

Clark & Clark, Fred S. Clark, *for appellant.*

*Michael J. Bowers, Attorney General, C. Latain Kell, Senior Assistant Attorney General, Lisa S. Siegel, Assistant Attorney General,* for appellee.