S97G1960. DENT et al. v. MEMORIAL HOSPITAL OF ADEL.
(509 SE2d 908)

CARLEY, Justice.

Mark Alan Dent, the 15-month-old son of Joe Edward Dent and Lee Anne Dent, stopped breathing at home, was successfully resuscitated, and was brought to Memorial Hospital of Adel. A physician admitted the child to the Hospital and ordered that he be placed on a pediatric apnea monitor. However, the child stopped breathing again and no one discovered the problem for several minutes. He died four days later. The Dents brought this wrongful death suit against the Hospital, alleging that their son died as a result of both ordinary and professional negligence on the part of the Hospital and its nursing staff. The trial court initially granted the Hospital's motion for summary judgment, but that judgment was reversed by the Court of Appeals. *Dent v. Memorial Hosp. of Adel*, 200 Ga. App. 499 (408 SE2d 473) (1991). The case proceeded to trial, where the evidence conflicted in several respects, including whether the alarm on the apnea monitor failed to sound, whether the nursing staff failed to turn the alarm switch to the "on" position, and whether the Hospital's crash cart lacked several essential items for pediatric patients. The jury returned a verdict in favor of the Hospital after being instructed, in

relevant part, that "if you find from the evidence in this case that the defendants did not commit any acts of professional negligence or malpractice, a verdict in the plaintiffs' favor would be unlawful. . . ." In their appeal, the Dents contended that this instruction might have misled the jury to believe that it must find professional negligence in order to return a verdict in favor of the plaintiffs. The Court of Appeals affirmed, reasoning that the charge could not have confused the jury into believing it could disregard the issue of ordinary negligence. *Dent v. Memorial Hosp. of Adel*, 227 Ga. App. 801 (490 SE2d 509) (1997). We granted certiorari to review this ruling of the Court of Appeals.

The Hospital urges that the plaintiffs did not object to the charge with the requisite specificity. The Dents' objection that the charge "left out the possibility of a verdict based on ordinary negligence" was "stated distinctly enough for a 'reasonable' trial judge to understand its nature, enabling him to rule intelligently on the specific point." *Christiansen v. Robertson*, 237 Ga. 711, 712 (229 SE2d 472) (1976).

The instruction which required a defense verdict if the jury found no professional negligence conflicted with other instructions which authorized the jury to consider ordinary negligence. " 'A charge containing two distinct propositions conflicting the one with the other is calculated to leave the jury in such a confused condition of mind that they can not render an intelligible verdict, and requires the grant of a new trial.' [Cits.]" *Clements v. Clements*, 247 Ga. 787, 789 (2) (279 SE2d 698) (1981). See also *Moreland v. Word*, 209 Ga. 463, 466 (7) (a) (74 SE2d 82) (1953).

> The jury cannot be expected to select one part of a charge to the exclusion of another, nor to decide between conflicts therein, nor to determine whether one part cures a previous error, without having their attention specially called thereto and being instructed accordingly.

*Morrison v. Dickey*, 119 Ga. 698 (2) (46 SE 863) (1904). The trial court's charge was in irreconcilable conflict and was never properly corrected, and by no reasoning are we able to say that this conflict was harmless. See *Johnson v. State*, 148 Ga. App. 702, 704 (2) (252 SE2d 205) (1979); *State Hwy. Dept. v. Hilliard*, 112 Ga. App. 498, 499 (1) (145 SE2d 824) (1965); *Baxter v. State Hwy. Dept.*, 108 Ga. App. 324 (132 SE2d 863) (1963).

The dissent opines that each criticism of the nursing staff's actions was an assertion of professional negligence and that the allegations of ordinary negligence relate only to the purported failure of the hospital to train the nurses, which could not have proximately caused the child's death apart from some failure of the nurses to

meet the professional standard of care. Whether the negligence alleged by a plaintiff is ordinary negligence or professional malpractice is a question of law. *Drawdy v. Dept. of Transp.*, 228 Ga. App. 338, 339 (491 SE2d 521) (1997). " 'If the alleged negligent act or omission of a hospital employee does not require the exercise of expert medical judgment, the fact that the employee also has expert medical credentials does not make the case one of "medical malpractice." ' " *Lamb v. Candler General Hosp.*, 262 Ga. 70, 71 (1) (413 SE2d 720) (1992). Whether to use certain equipment at all, what type of equipment to use, and whether certain equipment should be available in a specific case certainly are decisions which normally require the evaluation of the medical condition of a particular patient and, therefore, the application of professional knowledge, skill, and experience. However, the failure to operate equipment correctly or in accordance with a doctor's instructions or to keep certain equipment on hand is only ordinary, not professional, negligence. See *Robinson v. Med. Center of Central Ga.*, 217 Ga. App. 8, 9-10 (456 SE2d 254) (1995); *Sparks v. Southwest Community Hosp. & Med. Center*, 195 Ga. App. 858 (395 SE2d 68) (1990); *Porter v. Patterson*, 107 Ga. App. 64, 71 (1) (129 SE2d 70) (1962). An administrative act not involving professional knowledge, skill or experience is not required to be the subject of an expert opinion. *Hillhaven Rehabilitation & Convalescent Center v. Patterson*, 195 Ga. App. 70, 72 (2) (392 SE2d 557) (1990).

One such administrative act is a nurse's application of a heating pad to a patient, pursuant to the doctor's orders, but with the switch on the wrong setting. *Porter v. Patterson*, supra at 71-72 (1). Such an act is indistinguishable from the nurses' alleged failure in this case to activate the alarm on the apnea monitor as the doctor had ordered. This allegation and other averments regarding incorrect operation of the apnea monitor by the nurses and their failure to follow the doctor's orders are not ones of *professional* negligence. Moreover, the allegation that the nurses failed to ensure that the "crash cart" was equipped for pediatric patients is one of ordinary negligence. *Lamb v. Candler General Hosp.*, supra at 71 (1); *Jenkins County Hosp. Auth. v. Landrum*, 206 Ga. App. 753 (426 SE2d 572) (1992).

The plaintiffs alleged and presented evidence that certain actions of the nurses themselves constituted ordinary negligence. Thus, the charge was erroneous and harmful in that it might have misled the jury into believing that it could not return a verdict in favor of plaintiffs based upon this ordinary negligence.

*Judgment reversed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who dissent.*

BENHAM, Chief Justice, dissenting.

I respectfully dissent to the majority's reversal of the judgment

entered on the jury's verdict in favor of the defendant hospital. Appellants and the majority believe that another jury trial is necessitated by the trial court's instruction that the jury could not return a lawful verdict for the plaintiffs if the jury found that the hospital employees did not commit any acts of professional negligence or malpractice. The majority bases its conclusion on the belief that certain of the alleged acts of nursing negligence constitute ordinary negligence because the acts purportedly amount to a failure to operate equipment correctly or are administrative acts not involving professional knowledge. It appears from the majority opinion's succinct summation of the nursing activities at issue that the majority's position stems from a misapprehension of the vital role nurses play in medical care-giving, and a failure to understand the significance of the General Assembly's recognition of nursing as a licensed and regulated profession. From reading the transcript of the four-day trial, I have concluded that each of the plaintiffs' criticisms of the nursing staff's actions was an assertion of professional negligence since each involved the exercise of professional nursing skill and judgment. There being no ordinary negligence for which the hospital could be held liable,[1] the trial court's charge was not error.[2]

Through legislative enactment, nursing has been recognized statutorily as a profession. OCGA § 43-26-1 et seq. When a negligence action creates an issue in which professional skill and judgment are involved, professional negligence is at issue. *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70 (1) (413 SE2d 720) (1992). Where, as here, the negligence is an alleged failure to perform nursing duties and responsibilities with the requisite degree of care and skill required of the nursing profession,[3] the negligence action is one for

---

[1] The only allegation of ordinary negligence related to the hospital's purported failure to train the nursing staff. If, however, none of the nurses' alleged shortcomings constituted professional negligence, then whatever negligence there may have been in the hospital's training of the nurses could not have been proximately related to the child's death since the hospital's alleged shortcoming did not result in the failure of the nursing staff to meet the appropriate standard of care.

[2] While I would affirm the judgment of the Court of Appeals, I do not endorse the rationale employed by that court in reaching its judgment.

[3] There was expert testimony that the nurses had violated the appropriate standard of care by failing to follow the admitting physician's orders to take the child's temperature every hour, to place a vaporizer in the child's room, and to obtain a chest x-ray of the child. Other expert testimony found fault with the nursing personnel for failing to adjust the "gain knob" to record respiration on the apnea monitor; failing to connect both the respiratory and cardiac monitoring functions of the apnea monitor; failing to set both the cardiac and respiratory alarms on the monitor; failing to turn on the respiratory alarm; failing to make written comments about the child after connecting him to the apnea monitor; taking a lengthy period of time to connect the child to the monitor; failing to place a board under the child during resuscitation attempts; failing to establish an IV portal and to intubate the child before the treating physician arrived; failing to fill out a pediatric resuscitation medical chart before the child's apneic event; failing to have the "crash cart" equipped with pediatric

professional negligence since it "calls into question the conduct of a professional in [the professional's] area of expertise" and the allegations of negligence involve the questioning of expert nursing judgments. *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107 (2) (354 SE2d 872) (1987). See also *Chafin v. Wesley Homes*, 186 Ga. App. 403 (1) (367 SE2d 236) (1988); *Gen. Hosp. of Humana v. Bentley*, 184 Ga. App. 489, 490 (361 SE2d 718) (1987).[4] In *Chafin*, the allegations found to aver professional negligence included the use of a catheter, the allegedly wrongful administration of drugs, and the decision to feed a patient intravenously. In *Bentley*, the Court of Appeals ruled that hospital employees exercised expert professional judgment when the medical condition of the patient was the determinative factor in deciding on the amount of supervision to be given a patient. In *Robinson v. Medical Ctr. of Central Ga.*, 217 Ga. App. 8 (456 SE2d 254) (1995), because the decision to employ bed side rails was a matter of nursing judgment predicated on an overall assessment of the patient, it was a question of professional negligence whether the rails on the plaintiff's bed should have been raised. The assertion that professional hospital personnel having the duty to take a patient's vital signs did not do so promptly and at appropriate intervals, was an allegation of professional negligence. See *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 65 (424 SE2d 632) (1992).

Ordinary negligence, on the other hand, is at issue where the allegedly negligent conduct involves the execution of issued instructions *which execution requires no exercise of professional judgment or skill (Robinson v. Medical Center of Central Ga.*, supra, 217 Ga. App. at 10 (emphasis supplied)), or the performance of mere administrative or clerical tasks, again involving no professional judgment or skill. See, e.g., *Candler Gen. Hosp. v. McNorrill*, supra, 182 Ga. App. at 110, where moving a patient from a stretcher to a wheelchair, "an act of relative physical strength and dexterity rather than an act requiring the exercise of expert medical judgment," did not constitute an act of professional negligence.

The majority opinion points to two allegations of nursing conduct as alleging ordinary negligence. In *Porter v. Patterson*, 107 Ga. App. 64 (129 SE2d 70) (1962), cited by the majority as involving an act of ordinary negligence indistinguishable from one act of negligence involved herein, the issue was not whether the nurse's allegedly neg-

---

bicarbonate, pediatric-size defribillating pads, and a curved pediatric laryngoscope blade; failing to have the appropriately-sized mask for use with the ambu bag; and by not writing up a "code sheet" during the efforts to revive the child. .

[4] The hospital may be held liable under a theory of respondeat superior for the professional negligence of its employee nurses. *Holloway v. Northside Hosp.*, 230 Ga. App. 371 (496 SE2d 510) (1998); *Minster v. Pohl*, 206 Ga. App. 617, 621 (fn. 1) (426 SE2d 204) (1992).

ligent act was one of professional or ordinary negligence, but whether the hospital employer or the patient's physician was responsible under respondeat superior for the nurse's negligence.[5] The majority also concludes that the nurses' alleged failure to ensure that the "crash cart" was equipped for a pediatric patient constituted ordinary negligence. A *hospital* may be negligent under the "locality rule" if the facilities and services are not comparable to those "in general use under the same, or similar, circumstances in hospitals in the area. . . ." *Candler Gen. Hosp. v. McNorrill*, supra, 182 Ga. App. 107 (1). However, where the plaintiffs question the professional judgment of the hospital's nurses rather than the adequacy of the services or the facilities, the "locality rule" standard of care is not applicable and the exercise of professional judgment is governed by the standard of care ordinarily employed by that profession generally. *Wade v. John D. Archbold Mem. Hosp.*, 252 Ga. 118, 119 (311 SE2d 836) (1984); *Candler Gen. Hosp. v Joiner*, 180 Ga. App. 455 (1) (349 SE2d 756) (1986). In the case at bar, plaintiffs' attorney repeatedly assured the trial court and defense counsel that plaintiffs were not attempting to prove "locality rule" negligence and, in lieu of evidence of what similarly situated hospitals provide on their crash cart, plaintiffs went on to present expert testimony that the nurses fell below the professional standard of care by failing to have available on the crash cart the instruments the nurses knew a physician preferred, and the proper-sized equipment.[6] Thus, with regard to the assertions that the crash cart was not properly equipped, the plaintiffs chose to forego proving ordinary "locality rule" negligence on the part of the hospital and set about to establish that the allegedly ill-equipped crash cart was the product of the nursing staff's flawed exercise of professional judgment. The majority, by asserting that the allegation of negligence was one of ordinary negligence, disregards the statements of plaintiffs' counsel as to what he was alleging and improperly substitutes its judgment as to how the case should have been tried for that of plaintiffs' counsel.

Because I believe that the alleged acts of negligence on the part of the hospital nursing staff involved matters in which the nurses exercised their professional judgment and skill based upon an overall assessment of their young patient, I must respectfully dissent to the majority's conclusion that this tragic case contained aspects of ordi-

---

[5] *Porter v. Patterson* is also known for being an early statement of the "locality rule," the standard by which is measured a hospital's purported negligence in providing equipment and facilities. See *Wade v. John D. Archbold Mem. Hosp.*, 252 Ga. 118 (311 SE2d 836) (1984).

[6] In response, the hospital presented expert testimony that nurses do not fall below the professional standard of care in not having the "preferred" instruments and "size-appropriate" equipment on the crash cart.

nary negligence.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join this dissent.

DECIDED DECEMBER 4, 1998 —
RECONSIDERATION DENIED DECEMBER 17, 1998.

*Gray & Hedrick, William E. Gray II, L. Bruce Hedrick,* for appellants.

*Hall, Booth, Smith & Slover, John E. Hall, Jr.,* for appellee.